**LiLaw Inc.**, a Law Corporation
J. James Li, Ph.D. (SBN 202855, lij@lilaw.us)
Andrew M. Pierz (SBN 292970)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955

Attorneys for Plaintiff Citcon USA LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CITCON USA LLC, a California LLC,

Plaintiff,

vs.

MAPLEPAY INC., a Canadian Corporation, MAPLEPAY, INC., a Delaware Corporation, and HANG "HANK" MIAO, an individual,

Defendants.

**Case No.**

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS**

**DEMAND FOR JURY TRIAL**



Plaintiff Citcon USA LLC ("Citcon"), by and through their attorneys of record, hereby complains and alleges against defendants MaplePay Inc., MaplePay, Inc. (collectively, "MaplePay") and Hang "Hank" Miao ("Miao") (collectively, "Defendants") as follows:

## PARTIES AND NATURE OF ACTION

1. Plaintiff is a limited liability company organized under the laws of California having its principal place of business in Santa Clara, CA 95054-1283.
2. On information and belief, Defendant Miao is an individual residing in Canada.
3. On information and belief, Defendant MaplePay Inc. is a corporation organized under the laws of the Canada Business Corporations Act with its principal place of business at 1 Yonge St, Toronto, ON M5E 1W7.
4. On information and belief, the U.S. subsidiary MaplePay, Inc. is a wholly owned subsidiary of the Canadian company RiverPay, Inc. and is organized under the laws of the State of Delaware with its principal places of business in Silicon Valley, California and New York, New York. The Canadian parent company and the U.S. subsidiary are hereinafter collectively referred to as "MaplePay" unless otherwise specified.
5. This is an Action for misappropriation of trade secrets.

## JURISDICTION AND VENUE

6. This court has personal jurisdiction over Miao because he committed intentional torts directed at a California company which is part of the claims of the case.
7. This court has personal jurisdiction over MaplePay because they committed intentional torts directed at a California company which is part of the claims of the case.
8. The venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this case occurred in this district.
9. This court has subject matter jurisdiction over the federal statutory claims for trade secret misappropriation as the resolution of these claims involves significant federal



questions.

10. This court has supplemental jurisdiction over state law claims.

## GENERAL ALLEGATIONS

### The Parties

11. Citcon is a California limited liability corporation founded in 2015 that specializes in providing services to merchants in the United States to make it easier for merchants to accept payments through major Chinese mobile payment systems (the "Payment Systems") which are extremely popular in China with a growing presence in the United States.

12. Citcon is the largest supplier of these payment services in the United States and their clients include many large tourism-oriented companies.

13. Defendant Miao is a software engineer who performed work under contract to Citcon from on or about January 2017 through October 2017.

14. Defendant MaplePay was founded in 2017 and offers competing services to merchants and companies for the Payment Systems.

### A Chronology of Events

15. Miao began contract work with Citcon on or about January 2017 through DinoLab, a contracting firm.

16. During the period of Miao's contract work with Citcon, Miao had access to almost all of Citcon's source code and worked on all of Citcon's important software products.

17. DinoLab's contract with Citcon specifies that all work done for Citcon is considered "work-for-hire" and that any source code or other intellectual property created by Miao pursuant to his contract is the property of Citcon.

18. Miao is not the first contractor from DinoLab to work for Citcon. Former DinoLab contractor Yue "York" Hua ("Hua") began working for Citcon as a contractor in 2016.

19. Upon observing the value of Citcon's trade secret source code, Hua devised a plot to steal Citcon's trade secrets and create a competing entity.



LAW

20. Hua reached out to Ryan Zheng ("Zheng"), a successful yogurt businessman, and Hua convinced Zheng to partner with him in competing directly with Citcon in the growing field of mobile payment processing.

21. On or about February 2017, Zheng and Hua formed two sets of companies to compete with Citcon, RiverPay and MaplePay, with Zheng serving as CEO for both RiverPay and MaplePay.

22. Meanwhile Hua asked for, and received, full time employment with Citcon and thereby obtained full access to Citcon's trade secret source code.

23. During this period, Hua also convinced Miao to aid him in misappropriating Citcon's trade secrets for RiverPay and MaplePay. Hua also convinced other DinoLab employees to work for the new entities. Throughout 2017, various contractors with DinoLab would be added to MaplePay's board of directors including Li Mao, Han Fanguei, and Hua.

24. Hua would quit Citcon in June 2017 and immediately go to work for Zheng at RiverPay, bringing Citcon's trade secret source code to RiverPay and using it as the foundation for RiverPay's products and services.

25. Hua, Miao, and DinoLab created an incident to give Miao an opportunity to leave Citcon without undue suspicion of Miao's true goal of leaving to work for Citcon's competitor, RiverPay. RiverPay employs Yue Hua and now also employs Shi.

26. In late September 2017, Miao told a Citcon employee, Kenneth Shi ("Shi"), that he was interested in joining Citcon full time. Chunbo Huang, Citcon's CEO, agreed to extend a fulltime job offer to Miao. Shortly after that, on September 28, 2017, Huang signed Miao's offer letter. Three days later, on October 1, 2017, Miao accepted the job offer.

27. On October 2, 2017, around 7 a.m. when Huang was still at home, he received a telephone call from Tony Zhang ("Zhang"), the head of DinoLab. Zhang sounded very upset and asked Huang why Citcon had hired Miao away from DinoLab. Huang told Zhang that his impression was Miao had first contacted Citcon for the employment



opportunity, but that he was not involved in the hiring and needed to find out more from his employees. Zhang abruptly hung up the call while Huang was still talking.

28. Still on October 2, 2017, after Huang arrived at Citcon's office, he asked Shi about Miao. Shi told him that it was actually Shi who had first contacted Miao to ask him whether he was interested to work for Citcon. Huang then asked Shi to send an email to Tony Zhang to explain the situation. At 3:15pm on that day, Shi sent Zhang of DinoLab an email telling Zhang it was Shi who had first mentioned the job opportunity to Miao. Then, at 3:36 pm, Shi forwarded the email to Miao.

29. In the email, Shi stated to Tony Zhang of DinoLab that it was him who first contacted Miao for a potential position in Citcon:

> When we grow, I have come to realization that I needed some full-time engineers locally…. Hank was the first one coming into my mind. I thought it was a shot in the dark when I mentioned it to Hank, since he was happily employed at Dinolab. But I guess Hank also saw the opportunities in both the team and business, and I was so excited that he had accepted.

30. Thus, on the same day as the telephone call between Zhang and Huang regarding Miao's job offer from Citcon, Miao knew that the misunderstanding regarding whether Miao had contacted Citcon first was cleared out with his former employer, DinoLab.

31. The matter was further clarified in a teleconference. On October 3 or 4, 2017, Shi told Huang that it would be better if Huang had a telephone call with Miao to apologize to Miao and to persuade Miao to accept the employment offer from Citcon. Huang agreed. During the conference call among Shi, Miao, and Huang, Huang explained to Miao that he had not known who contacted whom first when Tony Zhang called him in the morning of October 2, 2017, because he had not been involved in the hiring. Huang told Miao that he was trying to explain to Zhang that he did not know whether Miao had contacted Citcon first or the other way around, but Zhang hung up on him. Huang also explained to Miao how the matter had been cleared up with Zhang by Shi's email sent on October 2.

32. Sometime in October 2017, Citcon discovered an article published by Miao entitled



"How My Life Was Ruined By A Silicon Valley Startup And Former PayPal & Uber Execs." (the "Miao Article"). The Miao Article attacked Citcon and Huang by grossly misrepresenting the events associated with Miao's job offer from Citcon. Citcon sent an email to Miao asking him to withdraw the article. Miao never responded.

33. At some point during Miao's contract period with Citcon, Miao made copies of Citcon's trade secret source code and took them from Citcon's facilities and servers.

34. On or about October 2017, Miao began working for RiverPay, a competitor to Citcon

35. While working for RiverPay, Miao has used Citcon's trade secret source code and incorporated it into several of RiverPay's products which are designed to compete directly with Citcon's products.

36. RiverPay provides its technology to MaplePay and RiverPay uses its misappropriated backend to handle MaplePay's transactions.

37. RiverPay has provided Citcon's misappropriated source code to MaplePay and MaplePay has incorporated the misappropriated source code into its own products.

38. On May 2, 2018, Citcon sued RiverPay, Shi, Hua and Miao in the case Citcon USA LLC v. RiverPay Inc. et al, Case No. 5:18-cv-02585-NC (The "RiverPay Case"). The RiverPay case is currently pending before United States District Court for the Northern District of California and is a closely related case to the instant case.

39. In the RiverPay case, Miao was sued solely for defamation in connection with the Miao Article. The Court in the RiverPay Case dismissed Miao.

40. Recently, Citcon discovered that Miao was heavily involved in copying and revising Citcon's source code that Hua misappropriated from Citcon. Citcon orally requested the court in the RiverPay Case to modify the case schedule to allow Miao being added back into the case under the misappropriation claim. The Court declined the oral request and advised Citcon to file a formal motion for leave to amend.

41. Also recently, Citcon discovered that RiverPay has transferred many of its contracts and, on information and belief, money and other assets to MaplePay. MaplePay is now providing full-fledged mobile pay services. MaplePay's WeChat Pay license is



registered under RiverPay's Ryan Zheng's name using Zheng's RiverPay email. On information and belief, RiverPay and MaplePay share the same software system for providing mobile payment services.

42. Because of the need to bring claims against MaplePay and Miao, and also because of the fact that the RiverPay Case is in the late stage of discovery and scheduled to go to trial in December 2019, Citcon decided to file the instant case against MaplePay and Miao although the claim of the instant case is based on the same common nucleus of facts as the RiverPay Case and is a natural extension of the RiverPay Case.

## COUNT ONE

**Misappropriation of Trade Secrets under 18 U.S.C. § 1836**
**(Against All Defendants)**

43. Citcon re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

44. Citcon's trade secrets at issue are related to a product or service used in, or intended for use in, interstate or foreign commerce. The payment services to which the trade secrets are related are used primarily by hotels, casinos and merchants of luxurious goods and tourist memorabilia in their business transactions with interstate and international travelers, especially tourists from China. Thus, the trade secrets are covered by the federal trade secret act, 18 U.S.C. § 1836.

45. Citcon's source code (the "Source Code") is the foundation of its popular mobile payment system. The specific features of the Source Code shall be described after a protective order is in place.

46. Citcon's Source Code is a trade secret under 18 U.S.C. § 1839(3). The Source Code is "technical information" that falls under the enumerated categories of "programs, or codes."

47. The Source Code is Citcon's property as it was created by Citcon's employees and contractors under agreements that their work would become the property of Citcon.



48. Citcon has taken reasonable measures to keep the Source Code secret by, among other things, limiting access to its trade secret information, guarding electronic access points to the information, and implementing employment policies requiring employees and contractors to abide by confidentiality agreements to Citcon.

49. The Source Code derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. The Source Code is not generally known by anyone outside Citcon's engineering group. Citcon spent thousands of manhours and significant computational resources to develop the source code. The Source Code is thus of significant economic value to anyone who wants to compete with Citcon, in terms of shortening their development time for a similar payment system software.

50. Defendants acquired Citcon's trade secret information in the improper and unlawful manner as stated in the Chronology of Events. Miao wrongfully acquired the Source Code from RiverPay and Citcon's former employees Hua and Shi, who had wrongfully acquired the Source Code during their work for Citcon and who now work for RiverPay. Due to Miao's familiarity with the Source Code, Miao knew that it had been wrongfully acquired by RiverPay, Hua and Shi. Miao has wrongfully used the Source Code by incorporating it into RiverPay's products and wrongfully disclosed the Source Code to RiverPay employees.

51. RiverPay has also disclosed the Source Code to MaplePay. MaplePay's board of directors includes Zheng, the CEO of RiverPay, and Hua. MaplePay, upon receiving the Source Code, knew or had reason to know that the Source Code had been acquired by improper means because their board of directors had conspired to misappropriate the Source Code from Citcon in the first instance. MaplePay has used the improperly acquired Source Code by employing it in MaplePay's products and services. Additionally, MaplePay uses and has used RiverPay's services to handle its transactions. MaplePay, by dint of its shared management with RiverPay, knows or



has reason to know that RiverPay's services use the Source Code, and thus MaplePay has also used Citcon's misappropriated trade secrets in this manner as well.

52. As a direct and proximate result of Defendants' conduct as alleged herein, Citcon has suffered damages exceeding millions of dollars although the precise amount of the damages is to be proved at trial. For example, on information and belief, the misappropriated Source Code allowed RiverPay and MaplePay to quickly release its own payment system to compete with Citcon, which has resulted in lost profits for Citcon and unjust enrichment for RiverPay and MaplePay. Citcon is entitled to recover such damages caused by misappropriation of trade secrets under 18 U.S.C. § 1836(b)(3)(B)(i).

53. Defendants' misappropriation of Citcon's trade secret information was willful and malicious, further entitling Citcon to recover exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and its attorneys' fees and costs under 18 U.S.C. § 1836(b)(3)(D).

54. Under 18 U.S.C. § 1836(c), this Court has the original federal jurisdiction over this claim.

55. On information and belief, if Defendants' conduct is not remedied, and if Defendants are not enjoined, Defendants will continue to misappropriate, disclose, and use, for their own benefit and to Citcon's detriment, Citcon's trade secret information.

56. Because Citcon's remedy at law is inadequate, Citcon seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief is necessary to eliminate the commercial advantage that otherwise would be derived from Defendants' continued misappropriation of Citcon's trade secret information.

## COUNT TWO

**Misappropriation of Trade Secrets under California Uniform Trade Secrets Act (Against All Defendants)**

57. Citcon re-alleges the allegations of the foregoing paragraphs as if fully set forth



herein.

58. Defendants' misappropriation of trade secrets is independently actionable under California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq*.

59. Under CUTSA, Citcon is entitled to recover damages in the form of actual loss, unjust enrichment and/or reasonable royalty. Cal. Civ. Code § 3426.3(a)&(b).

60. In light of Defendants' willful and malicious misappropriation of Citcon's trade secrets, Citcon is entitled to recover exemplary damages under Cal. Civ. Code § 3426.3(3)(c) and to recover fees and costs under Cal. Civ. Code § 3426.4.

61. Citcon is also entitled to injunctive relief under Cal. Civ. Code § 3426.2.

## PRAYER FOR RELIEF

62. WHEREFORE, Plaintiff prays for relief against Defendants that the Court shall

a. Impose preliminary and permanent injunction against Defendants;

b. Award compensatory damages according to the proof;

c. Award punitive and exemplary damages to deter similar wrongdoings;

d. Award prejudgment interest at the maximum legal rate as allowed by the law;

e. Award reasonable attorney's fees according to the proof;

f. Award costs of suit herein incurred;

g. Award prejudgment interest at the maximum legal rate as allowed by the law and

h. Award such other and further relief as the Court may deem proper.

## JURY DEMAND

63. Plaintiff hereby demands a trial by jury on all issues so triable.



DATED: April 18, 2019

**LILAW INC.**

By /s/ J. James Li

J. James Li, Ph.D.
Attorneys for Plaintiff Citcon USA LLC

