1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10

11    CITCON USA, LLC,                      Case No. 19-cv-02112-NC

                   Plaintiff,               **ORDER GRANTING IN PART**
12                                          **AND DENYING IN PART**
         v.                                 **MOTION TO DISMISS**
13
                                            Re: Dkt. No. 44
14    MAPLEPAY INC., et al.,

                   Defendants.
15

16

17           Plaintiff Citcon brings two claims for trade secret misappropriation against four

18    individuals — Hang "Hank" Miao, Ran "Ryan" Zheng, Fangwei "Simon" Han, and

19    Angela Wang — and two corporations, MaplePay, Inc., and Dino Lab, Inc.  *See* Dkt. No.

20    16 Second Amended Complaint ("SAC").  Citcon amended its original Complaint to add

21    defendants Zheng, Han, and Dino Lab.  *See* Dkt. No. 12.  Later, Citcon amended the

22    complaint a second time to include Wang as a defendant.  *See* SAC.  The Second Amended

23    Complaint now faces a motion to dismiss on multiple grounds.  Dkt. No. 44 ("MTD").

24           The central issues are (1) whether this Court has personal jurisdiction over

25    MaplePay, Zheng, Han, and Wang, (2) whether Citcon's claims against all defendants are

26    barred by res judicata, and (3) whether the Second Amended Complaint fails to allege

27    sufficient facts to state a claim for relief as to its two trade secret claims.  The Court finds

28    that MaplePay, Zheng, Han, and Wang do not have sufficient minimum contacts with

United States District Court
Northern District of California

California sufficient for the Court to assert personal jurisdiction over them.  As it pertains to the remaining two defendants, Miao and Dino Lab, the Court finds that Citcon's claims are not barred by res judicata.  Citcon's claims against the remaining defendants, however, are not sufficient to state a claim in their current form.  The motion is therefore GRANTED as to personal jurisdiction.  The motion is DENIED on res judicata grounds.  Finally, the motion to dismiss the two claims against Miao and Dino Lab is GRANTED with LEAVE TO AMEND.

## I.  BACKGROUND

### A.  MaplePay and RiverPay

In early 2017, defendant Ran "Ryan" Zheng and Fangwei "Simon" Han discussed creating a business to provide services to merchants to facilitate customer payments using the Chinese mobile payment systems WeChat Pay and Alipay.  Dkt. No. 44-1 Declaration of Ryan Zheng ("Zheng Decl.") ¶ 2.  In February 2017, they initially registered the corporation MaplePay, Inc. ("MaplePay") in Canada for the purpose of conducting that business.  *Id.*  Within two months, however, Zheng and Han decided they preferred the name "RiverPay" instead of MaplePay, so they registered a new corporation in March 2017 under the name "RiverPay Canada."  *Id.* ¶ 3.  RiverPay provides payment services in Canada and the United States, and it uses MaplePay's license with WeChat Pay to provide WeChat Pay services in Canada.  *Id.* ¶ 7.  As a result, the entities under the names MaplePay Canada and MaplePay Delaware do not have an active business.  *Id.* ¶ 3.  MaplePay has never provided any services, never had any software or employees, and has never had any income or customers.  *Id.* ¶ 5.  In August 2017, Zheng and Han turned MaplePay Canada, MaplePay Delaware, and RiverPay Canada into wholly owned subsidiaries of RiverPay Delaware.  *Id.* ¶ 4.

### B.  Prior Lawsuit

Citcon sued RiverPay Delaware, RiverPay Canada (collectively "RiverPay"), York Hua ("Hua"), and Kenny Shi ("Shi") on May 2, 2018, for trade secret misappropriation, breach of duty of loyalty, defamation, computer fraud, intentional interference with

United States District Court
Northern District of California

contract and prospective economic relations, and unfair competition.  *See Citcon USA LLC v. RiverPay Inc. et al.*, Case No. 5:18-cv-02585-NC (N.D. Cal.) ("*RiverPay*") at Dkt. No. 1.  Shortly thereafter, Citcon amended its complaint to add Hang "Hank" Miao as a defendant in the *RiverPay* Case for the defamation claim, based on an online article he allegedly wrote.  *RiverPay*, Dkt. No. 8 ¶¶ 68–73.  After this Court dismissed Citcon's claims with leave to amend twice, on December 27, 2018, the Court dismissed Citcon's defamation claim against Miao without leave to amend, thereby leaving no claims remaining against Miao.  *See RiverPay*, Dkt. No. 98 at 20–21.

Citcon filed a third amended complaint in *RiverPay* alleging that Hua and Shi, who are not defendants in the instant case, left Citcon to work for RiverPay and took Citcon's source code with them for use in RiverPay's products.  *See RiverPay*, Dkt. No. 103 ¶¶ 18–19, 61–64.  At the time, Dino Lab, Inc. employed Miao as a software contractor, and Citcon hired Miao to program its source code.  *Id.* ¶ 26.  Citcon also alleged that Shi conspired with RiverPay to recruit Miao to come work for RiverPay.  *Id.* ¶¶ 113–14.

At a case management conference on April 10, 2019, Citcon's counsel asked this Court for leave to amend its complaint to add Miao back into the case based on new evidence it revealed about Miao in discovery.  *See* Dkt. No. 44-2 Declaration of Edward Naidich ("Naidich Decl."), Ex. A at 4.   Because the deadline for amending pleadings had passed by approximately five months, this Court denied Citcon's oral request to amend but instructed Citcon's counsel to file a written brief demonstrating good cause to amend.  *See RiverPay* Dkt. No. 170.  In response, Citcon's counsel said that they did not want to delay, so Citcon would file a new case instead.  *Id.*

After Citcon filed a new lawsuit against MaplePay and Miao, *see* Dkt. No. 1, RiverPay moved for sanctions and argued that Citcon violated the Protective Order by using information it learned in discovery to file the new case.  *See RiverPay* Dkt. No. 220.  In response, Citcon argued that it had not violated the Protective Order because "[t]he Maple [sic] Case is the same general litigation as the RiverPay Case.  The MaplePay case is indistinguishable from the RiverPay Case in the sense that, like the latter, the former

United States District Court
Northern District of California

also relies on Hua's misappropriation of Citcon's source code." *RiverPay* Dkt. No. 227 at 3.

The *RiverPay* case went to trial where a jury awarded Citcon $1.5 million based on RiverPay's unjust enrichment from misappropriation of Citcon's source code. *RiverPay* Dkt. No. 487 ("Verdict") at 4. The jury did not find any liability against Hua and Shi. *Id.* The Court entered final judgment on Citcon's trade secret misappropriation claims in favor of Citcon and against RiverPay in the amount of $1.5 million, and against Citcon and in favor of Hua and Shi. *RiverPay* Dkt. No. 552 ("Judgment") at 3. The Court also entered judgment in favor of Miao and against Citcon on its defamation claims. *Id.* at 2–3. The parties engaged in post-verdict briefing regarding whether the defendants should be held jointly and severally liable for trade secret misappropriation. *RiverPay* Dkt. No 550 ("Order on Post-Verdict Briefing") at 13. The Court denied Citcon's request to give a jury instruction on joint and several liability because none of the evidence at trial had been presented under a theory of joint and several liability. *See id.* On October 2, 2020, Citcon filed a notice of appeal to the Ninth Circuit. *RiverPay* Dkt. No. 553.

## C. Current Lawsuit

On April 18, 2019, Citcon filed the instant case against MaplePay and Miao for misappropriation of trade secrets under federal and state law. *See* Dkt. No. 1. Citcon later amended its complaint to add Zheng, Han, Wang, and Dino Lab, Inc. as defendants. *See* SAC.

Defendants MaplePay, Miao, Zheng, Han, Wang, and Dino Lab, Inc. filed a motion to dismiss, arguing (1) that this Court lacks personal jurisdiction over MaplePay, Zheng, Han, and Wang, (2) that res judicata bars the complaint, and (3) that Citcon's complaint fails to state a claim. MTD. This Court held a hearing on the motion to dismiss on December 16, 2020. Dkt. No. 51. All parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 6, 43.

## II. LEGAL STANDARD

In a motion challenging personal jurisdiction under Rule 12(b)(2), the plaintiff, as

4

the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), and citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

//

5

### III.  DISCUSSION

Defendants move to dismiss Citcon's complaint on the following grounds: (1) this Court lacks personal jurisdiction over defendants MaplePay, Zheng, Han, and Wang; (2) res judicata bars Citcon's claims against all defendants; and (3) Citcon's claims against all defendants fail to state a claim under Rule 12(b)(6).  *See* MTD.

The narrow issues before the court are (1) whether the personal jurisdiction "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984) is satisfied as to MaplePay, (2) whether the fiduciary shield doctrine divests this Court of personal jurisdiction over Zheng, Han, and Wang, (3) establishing the proper test for privity as part of the res judicata analysis, and (4) after implementing the proper test, whether there is privity between Dino Lab and the RiverPay defendants, thereby precluding Citcon's claims against Dino Lab.

### A.    Personal Jurisdiction

Defendants move to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  *See* MTD.  Defendants contend that this Court lacks personal jurisdiction over MaplePay, Zheng, Han, and Wang because they are neither residents of California, nor do they have minimum contacts with California.  *See* MTD at 6, 8.

Where, as here, there is no applicable federal statute governing personal jurisdiction, a district court must apply the law of the state in which it sits, upon determining whether the exercise of personal jurisdiction over a nonresident defendant is proper.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Constitution.  Cal. Civ. Proc. Code § 410.10.  Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted).

United States District Court
Northern District of California

When the nonresident defendant's contacts with the forum are insufficiently pervasive to subject him to general personal jurisdiction, the court must ask whether the "nature and quality" of his contacts are sufficient to exercise specific personal jurisdiction over him. *Data Disc*, 557 F.2d at 1287. A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to establish either of them, specific personal jurisdiction over the nonresident defendant is improper. *Id.* (citations omitted). If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citations and internal quotation marks omitted).

The first prong of the specific jurisdiction test is satisfied by either "purposeful availment" or "purposeful direction" by the defendant. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (noting that the first step "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof."). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

Here, the issues sound in tort, so the purposeful direction analysis applies. A plaintiff can satisfy the first prong by showing that the defendant purposefully directed his activities at the forum. The Court evaluates purposeful direction by using the three-part effects test set out in *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the

1   defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum

2   state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

3   *Schwarzenegger*, 374 F.3d at 805 (internal quotation marks and citation omitted).  The

4   Court first addresses the effects test analysis for MaplePay, then addresses the fiduciary

5   shield doctrine for Zheng, Han, and Wang.

6           **1.**    **The Claims Against Defendant MaplePay Are Dismissed for Lack of**
7                  **Personal Jurisdiction**

8         The Court finds that it lacks personal jurisdiction over MaplePay.  Citcon has not

9   shown that MaplePay purposefully directed its activities at the forum state.  Because the

10   Court finds that the first two prongs of the effects test are not satisfied, the Court need not

11   reach the third prong.

12               **a.**    **Intentional Act**

13         Regarding the first element of the effects test, Citcon argues that MaplePay's

14   intentional act was its acquisition of Citcon's source code from RiverPay, and its

15   misappropriation of that source code into its own products.  SAC ¶¶ 43–44; Dkt. No. 48

16   ("Opp'n") at 7.  Defendants argue that MaplePay did not commit the intentional act in

17   question, and defendant Zheng submitted a declaration to that effect.  *See* Dkt. No. 49

18   ("Reply") at 4; *see also* Dkt. No. 44-1 Zheng Declaration ("Zheng Decl.") ¶ 1–5.

19         The first part of the effects test requires "an intent to perform an actual physical act

20   in the real world, rather than an intent to accomplish a result or consequence of that act."

21   *Schwarzenegger*, 374 F.3d at 806.  Here, Citcon does not advance any sufficient facts that

22   MaplePay committed any intentional action.  In its amended complaint, Citcon alleges that

23   RiverPay and MaplePay were formed for the purpose of competing with Citcon.  *See* SAC.

24   ¶27.  The amended complaint, however, does not indicate that MaplePay took any action

25   independent of RiverPay.  The only allegation unique to MaplePay, and one which is

26   uncontroverted by defendants in Zheng's declaration, is that it held the WeChat Pay

27   license that RiverPay used.  *See* SAC ¶ 48; *see also* Zheng Decl. ¶ 7.  Otherwise, Zheng's

28   declaration contradicts the allegations in the complaint.  Zheng's declaration shows that

United States District Court
Northern District of California

1    MaplePay has never had an active business or operation, let alone engaged in intentional
2    actions.

3         Even by looking at MaplePay's actions through the actions of its directors (Zheng,
4    Han, Wang), the allegations are too conclusory and vague to establish the intentional acts
5    prong of the effects test.  Citcon alleges "[o]n information and belief, Hua, Zheng, Han,
6    and Wang started to conspire to misappropriate Citcon's trade secrets to start a new
7    company sometimes [sic] in early 2017 when MaplePay was formed."  SAC ¶ 30.  "Hua
8    would quit Citcon in June 2017 and immediately go to work for Zheng at MaplePay/
9    RiverPay, bringing Citcon's trade secret source code to RiverPay and using it as the
10   foundation for RiverPay's products and services."  SAC ¶ 31.  These allegations show that
11   Citcon fails to recognize a distinction between MaplePay and RiverPay.  Thus, if any
12   intentional acts were taken, they were taken by RiverPay and its officers rather than by
13   MaplePay.  Therefore, the intentional acts prong of the effects test is not satisfied as to
14   MaplePay.

15         **b.    Express Aiming**

16        For the express aiming prong of the effects test, even if Citcon adequately alleged
17   an intentional act, Citcon similarly has not shown that MaplePay's actions were expressly
18   aimed at California.

19        "The 'express aiming' analysis depends, to a significant degree, on the specific type
20   of tort at issue." *Schwarzenegger*, 374 F.3d at 807.  The alleged torts in the complaint here
21   center on the improper access to and misuse of Citcon's trade secret source codes.  In trade
22   secret misappropriation actions, courts have routinely rejected arguments that express
23   aiming is satisfied where defendants targeted a plaintiff whom they knew to be a resident
24   of California.  *See e.g. E*Healthline.com, Inc. v. Pharmaniaga Berhad*, No. 18-cv-1069-
25   MCE-EFB, 2018 WL 5296291, *5 (E.D. Cal. Oct. 23, 2018) ("while it is clear that [the
26   defendant] knew [the plaintiff] was a business in California, Plaintiff has not put forth
27   sufficient information to show that [the defendant] expressly aimed their conduct related to
28   its misappropriation of confidential information claim at California."); *Medimpact*

*Healthcare Systems, Inc. v. IQVIA Holdings Inc.*, No. 19-cv-1865-GPC (LL), 2020 WL 143327, *10 (S.D. Cal. Mar. 24, 2020); *Serenium v. Zhou*, No. 20-cv-02132-BLF, 2020 WL 6275025, *6 (N.D. Cal. Oct. 26, 2020). Citcon argues that the defendants' intentional action is expressly aimed at California because the defendants conspired to compete with Citcon, who is a California corporate resident. *See* Opp'n at 7.

Specific personal jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). "Prior to *Walden v. Fiore*, courts in this circuit found the express aiming element to be satisfied where a defendant knew of the plaintiff's connection to the forum and there was a foreseeable harm to the plaintiff." *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 673 (N.D. Cal. 2020) *appeal docketed*, No. 20-16408 (9th Cir. Jul. 22, 2020); *see, e.g.*, *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007).

Later, the Ninth Circuit held in *Axiom Foods, Inc. v. Acerchem International, Inc.,* 874 F.3d 1064, 1069–70 (9th Cir. 2017), that *Walden* requires more than knowledge of a plaintiff's forum connections combined with the foreseeable harm that plaintiffs suffered in the forum. "This holding effectively abrogated any individualized targeting theory." *WhatsApp Inc.*, 472 F. Supp. 3d at 673. Instead, a defendant's conduct remains the touchstone of specific jurisdiction. *Walden*, 571 U.S. at 290. A court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods,* 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 289). "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

Here, Citcon erroneously applies an individualized targeting theory, because it argues that the defendants' connection to California is based upon their knowledge of Citcon's connections to California. Notably, neither the second amended complaint nor

United States District Court
Northern District of California

Citcon's opposition provide information about the forum in which the alleged misappropriation had the most impact.  For example, the complaint does not allege which ultimate products and services are affected, and where the defendants targeted them, or where the data was used or circulated.  Similarly, the complaint does not allege facts indicating whether it was in a California, China, or Canada location where Miao and Hua worked for Citcon and gained access to the source code at issue.  There are also no facts indicating that the defendants sought out and accessed Citcon's servers or storage locations in California.  *See WhatsApp Inc.*, 472 F. Supp. 3d at 672.  Citcon only contends that the defendants expressly aimed their intentional conduct at California because Citcon is a resident of California.  The Court is not convinced that Citcon's alleged injury, the misappropriated trade secrets, is "tethered to [California] in any meaningful way."  *Walden* 571 U.S. at 290.  Therefore, the Court concludes that defendants' alleged actions were not expressly aimed at California.

Because the Court does not find the first two prongs of the effects test satisfied, the Court need not reach the third prong analyzing whether the defendants knew that the harm resulting from their actions would likely be suffered in California.

### c. The Controverted Facts Should Not Be Resolved in Citcon's Favor

The Court finds that Citcon's arguments for asserting personal jurisdiction over MaplePay fail.  The second amended complaint alleges that the employee defendants are citizens of Canada and China.  SAC ¶¶ 2–7.  Zheng's declaration demonstrates that MaplePay does not: (1) have an office or place of business in California; (2) have any income or customers in California; (3) provide any services or have any software or employees in California; (4) or have an active business.  Zheng Decl. ¶ 5.  Additionally, Zheng avers that MaplePay is a wholly owned subsidiary of RiverPay Delaware, but RiverPay has never transferred any contracts, money, or assets to MaplePay, and RiverPay only uses MaplePay's license with WeChat Pay to provide those services in Canada.  *Id.* ¶¶ 6–7.

1    Citcon has not offered any facts to rebut this showing.  In fact, Citcon does not

2    provide any declarations based on personal knowledge.  Instead, Citcon provides a

3    declaration from plaintiff's counsel J. James Li which provides the procedural history of

4    the RiverPay case, and additional information about Han and Wang's roles that were

5    notably absent from the second amended complaint.  *See* Dkt. No. 48-1 Declaration of J.

6    James Li ("Li Decl.").

7    Instead, Citcon argues that the purposeful direction prong of the personal

8    jurisdiction analysis is nonetheless satisfied because (1) "Defendants have committed an

9    intentional action of trade secret [misappropriation]"; (2) "the intentional action is

10   expressly aimed at Citcon, a California corporate resident, based on Defendants'

11   conspiracy to take Citcon's source code to compete with Citcon"; and (3) "the

12   misappropriation has caused Citcon significant harm."  Opp'n at 7.  Citcon erroneously

13   contends that the allegations in the complaint are uncontroverted, and as such, it has

14   satisfied its prima facie case for personal jurisdiction over Defendants under the effects

15   test.  Opp'n at 7.

16   "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and

17   conflicts between the facts *contained in the parties' affidavits* must be resolved in

18   [plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.

19   2002) (emphasis added).  Nonetheless, "mere 'bare bones' assertions of minimum contacts

20   with the forum or legal conclusions unsupported by specific factual allegations will not

21   satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir.

22   2007).  The defendants argue that Plaintiff's counsel's declaration does not actually

23   establish a prima facie case of personal jurisdiction, *see* Reply at 2, n.1, and that Citcon

24   cites to irrelevant allegations, allegations in its complaint that are mere legal conclusions

25   unsupported by specific factual allegations, and allegations contradicted by the Zheng

26   declaration, *see* Reply at 2.

27   "An affidavit or declarations may contain only facts, must conform as much as

28   possible to the requirements of Fed.R.Civ.P. 56[(c)(4)], and must avoid conclusions and

United States District Court
Northern District of California

12

1    argument. Any statement made upon information or belief must specify the basis therefor.

2    An affidavit or declaration not in compliance with this rule may be stricken in whole or in

3    part." *Mulato v. Wells Fargo Bank, N.A*., 76 F. Supp. 3d 929, 946 (N.D. Cal. 2014)

4    (quoting Civ. L.R. 7–5(b)). Federal Rule of Civil Procedure 56(c)(4) (previously in

5    subdivision (e)) provides that "[a]n affidavit or declaration used to support or oppose a

6    motion must be made on personal knowledge, set out facts that would be admissible in

7    evidence, and show that the affiant or declarant is competent to testify on the matters

8    stated." *Id.*

9         Citcon, however, has not offered any facts to rebut the defendants' showing that

10   MaplePay did not have an active business, and that RiverPay never transferred any assets

11   to MaplePay — including any source codes RiverPay may have acquired. *See* MTD at 7–

12   8. In considering whether personal jurisdiction is proper, the court "may not assume the

13   truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc.*

14   *v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Data Disc, Inc.*,

15   557 F.2d at 1284). Here, Defendants successfully contradict the allegations of the

16   amended complaint via affidavit. *See* Zheng Decl. And because Citcon did not rebut

17   Defendants' showing by declaration or affidavit, Citcon did not create a conflict between

18   the facts at issue. Thus, the Court cannot assume the truth of Citcon's conclusory

19   allegations.

20        Citcon has not met its burden in making a prima facie showing that MaplePay has

21   sufficient contacts with California that would support the exercise of specific personal

22   jurisdiction over it. Because Citcon did not satisfy its burden under the effects test, and

23   because the Court cannot resolve the controverted facts in Citcon's favor, the Court finds

24   that MaplePay did not purposefully direct its activities in California. Therefore, the claims

25   against MaplePay are dismissed without prejudice for lack of personal jurisdiction.

26   //

27   //

28   //

United States District Court
Northern District of California

13

**2.     The Claims Against Defendants Zheng, Han, and Wang Are Dismissed for Lack of Personal Jurisdiction**

Defendants argue that the fiduciary shield doctrine applies, and that it divests this Court of personal jurisdiction over Zheng, Han, and Wang.  MTD at 8.  Citcon fails to address the fiduciary shield doctrine in its opposition brief.  *See generally* Opp'n.

Under the fiduciary shield doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."  *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  "The fiduciary shield doctrine may be ignored in two circumstances: (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities."  *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. 08-cv-4254 PJH, 2009 WL 29905, at *5 (N.D. Cal. Jan. 5, 2009).

As to the first circumstance, the parties agree that neither RiverPay nor MaplePay are the agents or alter ego of the officer defendants.  *See* Reply at 5.  As to the second circumstance, courts should disregard the fiduciary shield doctrine upon finding that the corporate officers were typically involved in instances where the defendants were the primary participants or the "guiding spirit behind the wrongful conduct," or the "central figure" in the challenged corporate activity.  *See Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 n.10.

Here, although employee defendants Zheng, Han, and Wang are corporate directors of MaplePay, *see* Zheng Decl. ¶ 8, the amended complaint does not allege facts showing that those defendants were the "guiding spirits" in the alleged trade secret misappropriation.  In fact, the complaint is devoid of facts regarding Zheng, Han, or Wang's involvements at all.  The complaint only alleges that "[former Dino Lab contractor Yue "York"] Hua reached out to [Zheng], a successful yogurt [sic] businessman, and Hua convinced Zheng to partner with him in competing directly with Citcon in the growing field of mobile payment processing," SAC ¶ 26; "Zheng and Hua formed two sets of

14

companies to compete with Citcon, RiverPay and MaplePay, with Zheng serving as CEO for both RiverPay and MaplePay," SAC ¶ 27; "On information and belief, Hua, Zheng, Han and Wang started to conspire to misappropriate Citcon's trade secrets to start a new company sometimes [sic] in early 2017 when MaplePay was formed," SAC ¶ 30; and "Hua would quit Citcon in June 2017 and immediately go to work for Zheng at MaplePay/RiverPay, bringing Citcon's trade secret source code to RiverPay and using it as the foundation for RiverPay's products and services," SAC ¶ 31.  The remainder of the allegations in the complaint focus on Miao's employment with Citcon and Dino Lab.  *See* SAC ¶¶ 32–48.  Those remaining allegations do not involve Zheng, who serves as the figurehead for MaplePay and RiverPay.  *Id.*

Meanwhile, Han and Wang are not referenced in the complaint at all aside from the single conclusory allegation that they "started to conspire," *see id.* ¶ 30, and aside from identifying that they are officers of RiverPay, *see id.* ¶ 18.  Citcon only references Han and Wang's roles in its opposition brief, and in Li's declaration.  *See* Opp'n at 6, 11, 23; *see also* Li Decl. ¶¶ 11, 12, 14.  Citcon has failed to rebut the employee defendants' showing that they did not have the requisite control of, or direct participation in the alleged activities to support the exercise of personal jurisdiction against them.  Therefore, Citcon has failed to provide any basis that would support disregarding the fiduciary shield doctrine.

Citcon has failed to properly allege that this Court has personal jurisdiction over MaplePay, and it failed to properly rebut controverted allegations via declaration or affidavit.  Furthermore, the Court finds that there is not personal jurisdiction over employee defendants Zheng, Han, and Wang because they are protected by the fiduciary shield doctrine.  Accordingly, the Court GRANTS Defendants' motion to dismiss Citcon's trade secret misappropriation claims against MaplePay, Zheng, Han, and Wang without prejudice for lack of personal jurisdiction.

### 3.   Jurisdictional Discovery

At the hearing on this motion, Citcon's counsel stated that if the Court found its

1    allegations insufficient, then it would like the opportunity for jurisdictional discovery.  *See*

2    Dkt. No. 51.  Citcon did not request jurisdictional discovery prior to the hearing.

3          Here, the Court finds that jurisdictional discovery would not be useful in this

4    instance.  In the prior case, Citcon presented three complaints and ten causes of action to

5    assert trade secret misappropriation relating to the same nucleus of facts.  *See RiverPay*

6    Dkt. No. 103.  Citcon had ample opportunity, and the benefit of the prior case going to

7    trial, to adequately allege personal jurisdiction and present a viable claim against the

8    defendants here.  After the hearing on the motion to dismiss, the Court does not find that

9    jurisdictional discovery would ameliorate these deficiencies.  Therefore, the Court

10   DENIES any requests for jurisdictional discovery.

11       **B.    Res Judicata**

12         Based on this Court's conclusions above regarding personal jurisdiction, the

13   following analyses only pertain to the remaining defendants, Miao and Dino Lab.  In the

14   instant case, Defendants contend that the claims raised in this lawsuit are barred because

15   they were raised, or could have been raised, in *RiverPay*.

16         Res judicata, also known as claim preclusion, bars litigation in a subsequent action

17   of any claims that were raised or could have been raised in the prior action.  *W. Radio*

18   *Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  "Res judicata prevents

19   litigation of all grounds for, or defenses to, recovery that were previously available to the

20   parties, regardless of whether they were asserted or determined in the prior proceeding."

21   *Brown v. Felsen*, 442 U.S. 127, 131 (1979).  Res judicata, "has the dual purpose of

22   protecting litigants from the burden of relitigating an identical issue with the same party or

23   his privy and of promoting judicial economy by preventing needless litigation."  *Parklane*

24   *Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

25         In order for res judicata to apply there must be (1) an identity of claims, (2) a final

26   judgment on the merits, and (3) identity or privity between parties.  *W. Radio Servs. Co.*,

27   123 F.3d at 1192.  Here, the prior case resulted in a jury trial, and the Court entered final

28   judgment on Citcon's trade secret misappropriation claims (a) in favor of Citcon and

United States District Court
Northern District of California

16

1   against RiverPay in the amount of $1.5 million, and (b) against Citcon and in favor of Hua

2   and Shi.  MTD at 5; *see also* RiverPay Dkt. No. 552.  Thus, the final judgment on the

3   merits element is satisfied so the Court's analysis focuses on the remaining two elements.

### 1.   Citcon's Claims Against Miao Are Not Barred by Res Judicata

#### a.   Same Parties or Privity

6   The Court must consider whether there is identity or privity of parties in the two

7   actions.  Here, there is no dispute that Miao was an identical party in the two lawsuits.

8   Citcon named Miao as a defendant in both cases and as such, this element of the res

9   judicata inquiry is satisfied.

#### b.    Identity of Claims

11   In determining whether successive claims constitute the same cause of action, the

12   Court considers (1) whether rights or interests established in the prior judgment would be

13   destroyed or impaired by prosecution of the second action; (2) whether substantially the

14   same evidence is presented in the two actions; (3) whether the two suits involve

15   infringement of the same right; and (4) whether the two suits arise out of the same

16   transactional nucleus of facts.  *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02

17   (9th Cir. 1982).  "The last of these criteria is the most important."  *Id.* at 1202.  The Ninth

18   Circuit has found that satisfaction of the fourth factor alone is sufficient to establish an

19   identity of claims.  *See Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension,*

20   *Welfare and Training Trust Funds v. Karr*, 944 F.2d 1426, 1430 (9th Cir. 1993) (citing

21   cases finding successive claims barred by res judicata based only on analysis of the fourth

22   factor).

23   The two cases can have the same transactional nucleus of facts even if the second

24   lawsuit identifies new claims.  "Newly articulated claims based on the same nucleus of

25   facts may still be subject to a res judicata finding if the claims could have been brought in

26   the earlier action."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322

27   F.3d 1064, 1078 (9th Cir. 2003).  If claims are related to the same set of facts and could be

28   conveniently tried together, then there is identity of claims.  *Karr*, 994 F.2d at 1429; *see*

United States District Court
Northern District of California

*also Durney v. WaveCrest Laboratories, LLC*, 441 F. Supp. 2d 1055, 10601 (N.D. Cal. 2005) (where the prior *breach of contract* action involved plaintiff's performance and defendant's failure to pay, the court found that the second action for *quantum meruit* was merely an alternative legal theory based on the same conduct, and the two actions arose from the same transactional nucleus of facts).

"In determining whether the same transactional nucleus of facts are involved, the courts have focused on whether the two causes of action allege the *same conduct* and whether the two causes of action allege conduct which is *contemporaneous*." *Durney*, 441 F. Supp. 2d at 1060 (emphasis added). The elements necessary to prove each cause of action drive the determination of whether the underlying conduct is sufficiently similar or different. *See id.* at 1061; *see also Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992) (even though both suits related to an Environmental Impact Statement, the two claims in each action alleged different governmental conduct, and thus there was not an identity of claims). Here, Citcon argues that the defamation cause of action against Miao in *RiverPay* is not the same as the trade secret misappropriation cause of action against him here. *See* Opp'n at 14. Defendants argue that the causes of action are the same because they are based on the same common nucleus of operative facts (the misappropriation of Citcon's source code), and because those claims share a factual foundation, they could have been brought together in the *RiverPay* case. *See* MTD at 10–11.

After considering the Ninth Circuit's four-factor analysis, the Court agrees with Citcon. The claims against Miao in *RiverPay* were completely different from the claims at issue here. And although the general universe of facts involves access to Citcon's source code, the conduct involved in the defamation claims differ from those alleged for improperly acquiring trade secrets. First, the dismissal of the defamation claim in *RiverPay* would not be affected by the prosecution of trade secret misappropriation claims in this action because the inquiries center on different actions allegedly undertaken by Miao.

Second, in *RiverPay*, Citcon brought defamation claims against Miao arising out of statements he made in an article about Citcon and its CEO.  *See RiverPay* Dkt. No. 103; *see also* SAC ¶ 39.  But Citcon did not have any evidence of Miao's involvement in the alleged misappropriation until well after this Court dismissed the defamation claims against Miao.  *See* Li Decl. ¶ 7. Although it is unclear whether a temporal distinction exists between the prior and subsequent claims, the harms arose from different facts.  *See Media Rights Technologies, Inc. v. Microsoft Corporation*, 922 F.3d 1014, 1027 (9th Cir. 2019) ("'If the harm[s] arose at the same time, then there was no reason why the plaintiff could not have brought [both] claim[s] in the first action. The plaintiff simply could have added a claim to the complaint.'. . .  In contrast, '[i]f the harm[s] arose from different facts,' then a party is not obligated to bring both claims on pain of preclusion." (internal citations omitted)).  Thus, any evidence presented in this action for misappropriation would be unrelated and wholly separate from evidence presented in the prior action for defamation.

Third, the two claims involve infringement of different rights.  The defamation claim involves reputational harm, while the trade secret claim involves intellectual property damages.  *See* Opp'n at 14.  Finally, although the defamation claim involved an online article related to the events at issue in this case, at that time Citcon had no facts supporting the misappropriation claim against Miao, and the elements of each cause of action involve completely different underlying facts.  Therefore, these do not constitute the same cause of action, and res judicata does not bar the trade secret misappropriation claim against Miao.

Further, Defendants argue that the claims against Miao are barred by res judicata because the claims "could have been brought" in the *RiverPay* case.  Reply at 13.  Citcon contends that Defendants distort this statement of law, and the Court agrees.  The "could have been brought" standard guides a court in determining whether there is an identity of claims.  *See Tahoe-Sierra*, 322 F.3d at 1078 ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims *could have been brought* in the earlier action.") (emphasis added).  Here, the Court has already established

that the two claims at issue are not substantially the same.  Although Citcon theoretically could have alleged misappropriation claims against Miao at the outset of the *RiverPay* case, it did not.  By the time Citcon discovered evidence necessary to bring a misappropriation claim against Miao in *RiverPay*, the opportunity for amendment had lapsed.  *See Herrera v. Countrywide KB Home Loans*, No. 11-cv-03591-LHK, 2012 WL 901340, at *4 (N.D. Cal. Mar. 15, 2012) (finding that if plaintiff could have amended the prior complaint to allege the successive claims, then identity of claims exists).  The parties did not have an opportunity to fully litigate trade secret misappropriation claims against Miao.  Therefore, the claims against Maio are not barred by res judicata.

### 2. Citcon's Claims Against Dino Lab, Inc. Are Not Barred by Res Judicata

#### a. Identity of Claims

The Court must consider whether there is identity of claims in the two actions as it pertains to Dino Lab, Inc.  Here, there is no dispute that trade secret misappropriation is the cause of action at issue in the instant case and in *RiverPay*.  Because that is the only cause of action in the amended complaint asserted against Dino Lab, Inc., this element of the res judicata inquiry is satisfied.  The issue in dispute is whether Dino Lab is a party or privy of a party in the *RiverPay* case.

#### b. Same Parties or Privity

Finally, the Court looks to whether *RiverPay* and the current lawsuit involve parties in privity with each other.  Specifically, whether Dino Lab is in privity with a *RiverPay* defendant.  The Ninth Circuit has defined privity as when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."  *Stratosphere Litig. LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (9th Cir. 2002).  Privity exists if there is sufficient commonality of interests between the parties.  *Tahoe-Sierra*, 322 F.3d at 1081.  The parties here disagree on the proper test for privity since the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008).  The defendants argue that the "virtual representation" test under

*Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) governs, whereas Citcon argues that *Taylor* governs.[1]

The Supreme Court in *Taylor* clarified the scope of "[t]he preclusive effect of a federal-court judgment" on a nonparty to the case in which the judgment was issued. 553 U.S. at 891. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor*, 553 U.S. at 892. The Supreme Court explained how generally, claim and issue preclusion do not apply to nonparties, but that there were six categories of exceptions to this general rule. *Id.* at 893. While no bright-line definition governs the framework for privity, the Supreme Court identified these general categories, explaining that they did not serve as a "definitive taxonomy." *Id.* at 893 n.6. Privity may exist between a party and a nonparty where: (1) the nonparty agrees to be bound by the determination in the first action; (2) the nonparty has a pre-existing substantive legal relationship with a party to the judgment, such as preceding and succeeding owners of property, bailee and bailor, or assignee and assignor; (3) the nonparty was adequately represented in the first action by someone with the same interests; (4) the nonparty assumed control over the litigation in which the judgment was rendered; (5) the nonparty is bringing suit as a representative, or proxy, of a person who was a party to the previous action; and (6) the nonparty is barred by statute from relitigating an issue already adjudicated. *Id.* at 893–95.

The Supreme Court in *Taylor* disapproved of the more expansive doctrine of "virtual representation," in which "a person may be bound by a judgment if she was adequately represented by a party to the proceeding yielding that judgment." *Id.* at 896. Furthermore, the Ninth Circuit and courts in this district have recognized *Taylor*'s effect in

---

[1] To advance their proposition that federal courts still use *Adams* to establish privity, Defendants cite to *Pinnacle Great Plains Operating Co., LLC v. Swenson*, No. 1:17-cv-00120-DCN, 2017 WL 4855846, at * 9–11 (D. Idaho Oct. 26, 2017). Although the *Pinnacle* court employed both the *Adams* and *Taylor* frameworks, this Court is not persuaded by this out-of-district case because it is not controlling and stands in contrast with courts in this district that have recognized *Adams'* abrogation. *See Alphaville Design, Inc. v. Knoll, Inc.*, 627 F. Supp. 2d 1121, 1136 (N.D. Cal. 2009).

United States District Court
Northern District of California

abrogating the "virtual representation" doctrine in *Adams*.  *See e.g.*, *Owens v. Braithwaite*, 812 F. App'x 577, 578 (9th Cir. 2020); *Rivera v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO, Local 444*, No. 3:16-CV-04959-WHO, 2017 WL 3021038, at *3 n.2 (N.D. Cal. July 17, 2017); *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F. Supp. 2d 1121, 1136 (N.D. Cal. 2009).

For the second category, however, the *Taylor* Court left untouched the scope of *other* substantive legal relationships that pre-*Taylor* courts found gave rise to privity.  *See Taylor*, 553 U.S. at 894; *see e.g. W. Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (officer-corporation); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (same); *Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959) (principal-agent).  This may explain why Defendants still rely on *Adams* to establish privity for substantive legal relationships such as officer and corporation, principal and agent, or employer and employee.  Even if the *Taylor* court left this aspect of the second category untouched, those substantive legal relationships do not come into play here for Dino Lab.  Because the Supreme Court clearly denounced use of the virtual representation doctrine, this Court will analyze the privity exception to non-party claim preclusion under *Taylor*'s categories.

c.   **Under *Taylor*, Dino Lab Is Not in Privity with the *RiverPay* Defendants, Thus the Claims Against Dino Lab Are Not Barred by Res Judicata.**

Dino Lab was not a party in the *RiverPay* case.  Defendants argue that Dino Lab is in privity with the *RiverPay* defendants, thereby barring all claims against Dino Lab under res judicata, but Citcon argues that they are not in privity.  The defendants focus only on the second and third *Taylor* categories — a pre-existing substantive legal relationship specifically through succession of property, and a non-party's adequate representation in the first action by someone with the same interests.  *See* Reply at 12.  The Court will focus primarily on those two categories because they are most relevant to this analysis.  The Court finds that neither is sufficient to establish privity here.

### i.   Second Category: Substantive Legal Relationship

*Taylor*'s second category establishes a limited exception to the rule against non-party claim preclusion where the nonparty has a pre-existing substantive legal relationship with a party to the judgment, such as preceding and succeeding owners of property. *Taylor* 553 U.S. at 894.  The Supreme Court in *Taylor* cited the Second Restatement of Judgments and Wright and Miller in its discussion of the second ground for privity.  *Id.* The Restatement and Wright and Miller both make clear that privity follows the property acquired.  *See* 2 Rest. of Judgments § 43; *see also* 18A Fed. Prac. & Proc. Juris. § 4462. As such, *Taylor* contemplates a property-based legal relationship, and that type of relationship does not exist here.

Defendants assert that there is a substantive legal relationship between Dino Lab and the previous defendants in *RiverPay* because Dino Lab employed Miao and Hua, who were defendants in the previous case.  *See* Reply at 12; *see also* SAC ¶¶ 21–24.  They argue that privity exists because of Dino Lab's "affiliations" with the defendants in the *RiverPay* case.  MTD at 13.  Further, Defendants argue that the connection between Dino Lab and Miao and Hua is important because Hua (a non-party here, but a defendant in *RiverPay*) was accused by Citcon of "mastermind[ing] the misappropriation of Citcon's source code."  *RiverPay* Dkt. No. 227 at 5.  Even if the defendants' argument assumes that the source code is property for purposes of *Taylor*'s second privity category, Dino Lab still did not engage in the type of property-based legal relationship required.  Dino Lab was not in an assignee-assignor or bailee-bailor relationship, and the facts of the amended complaint do not indicate that it was either a preceding or succeeding owner of property.[2] The defendants' reliance on an employer-employee relationship is unsupported and insufficient to establish the required privity here.  Therefore, under the second *Taylor*

---

[2]  Defendants note that a major issue in the *RiverPay* case was whether Dino Lab "was the actual owner of the source code that Citcon claimed was misappropriated by RiverPay and Hua."  Reply at 12.  For purposes of determining privity, it is irrelevant whether or not Dino Lab was the actual owner of the source code.  The parties here do not contend that there was a succession of property between previous *RiverPay* defendants, Hua and Miao.

1    category, Dino Lab is not in privity with the parties in the prior case.

### ii.    Third Category: Adequate Representation

*Taylor*'s third category establishes privity in "limited circumstances" where the nonparty was adequately represented in the first action by someone with the same interests. *Taylor* 553 U.S. at 894–95.  Here, Defendants argue that "Dino Lab is controlled by the same people who control RiverPay" — Hua, Han, and Zheng.  *See* Reply at 12; *see also RiverPay* Dkt. No. 473 Trial Testimony 12/18/19.  Thus, the defendants assert that Dino Lab was adequately represented by Hua, Han, and Zheng in *RiverPay*.

Dino Lab was never represented in *RiverPay*.  Zheng and Han, defendants here, provided witness testimony in *RiverPay*, but did not represent Dino Lab's interests in the prior lawsuit.  Although a major issue litigated in *RiverPay* was whether Dino Lab was the actual owner of the source code, *see RiverPay* Dkt. No. 237, that issue was part of a factual dispute on summary judgment and the inquiry was into whether Hua (a defendant and partial owner of Dino Lab) was the owner of the source code, *id.* Thus, *Taylor*'s third category similarly does not establish privity here.

### iii.    Remaining *Taylor* Categories

The remaining *Taylor* categories fail to establish Dino Lab's privity with any of the prior defendants in *RiverPay*.  Under the first category, Dino Lab entered no such agreement to be bound by the determination in the first action.  *See* Opp'n at 11.  Under the fourth category, there are no facts to establish that Dino Lab was in control of the *RiverPay* litigation.  Zheng and Han's witness testimony in *RiverPay* did not confer control over the litigation to Dino Lab, nor did they testify on Dino Lab's behalf.  The fifth category is irrelevant here because Dino Lab is not bringing suit, and it is not acting as a proxy or representative for any previous parties.  Finally, the sixth category, which bars nonparties by statute from relitigating an issue already adjudicated, is irrelevant here because no statute applies.

Under the above analysis, the Court finds that none of the six *Taylor* categories establish an exception to the general rule against nonparty claim preclusion.  In other

United States District Court
Northern District of California

24

words, Dino Lab is not in privity with the previous defendants in *RiverPay*. Without satisfying the privity element of res judicata, the claims against Dino Lab here are not barred. Accordingly, the Court DENIES Defendants' motion to dismiss the claims against Dino Lab on these grounds.

### 3. The Claims Do Not Involve Claim-Splitting

The defendants secondarily argue that Citcon's claims against all defendants should be dismissed as duplicative of the *RiverPay* case. *See* MTD at 13. "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams*, 487 F.3d at 688 (quotation marks and citation omitted). A court has discretion to dismiss a later-filed complaint for being duplicative of one previously filed, it may stay that action pending resolution of the previously filed action, it may enjoin the parties from proceeding with it, or it may consolidate both actions. *Id.* Although *Adams*' holding on the virtual representation doctrine has since been overruled, "the *Adams* court's discussion of impermissible claim-splitting remains precedential." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 2016 WL 3197390, at *2 n.1 (E.D. Cal. June 8, 2016). The purpose behind the duplicative litigation doctrine (otherwise known as claim-splitting) is to prevent a plaintiff's attempt to avoid the consequences of the court's prior ruling. *See Adams*, 487 F.3d at 688. "[T]he fact that plaintiff was denied leave to amend does not give h[er] the right to file a second lawsuit based on the same facts." *Id.* (internal citations omitted).

Here, Defendants argue that Citcon's claims are duplicative of its claims in *RiverPay* because "the Court denied Citcon's oral motion to amend its complaint . . . and Citcon instead granted itself a 'back door' motion to amend by filing a new lawsuit." MTD at 13. In fact, this Court did not flatly deny Citcon leave to amend its complaint in *RiverPay*. *See* Li Decl., Ex. H "CMC Hearing Transcript." This Court did not find good cause to amend or add a new party to the *RiverPay* case, so the Court ordered Citcon to show cause and proffer with the defendants if it chose to pursue an amendment. *Id.* Thus, Citcon did not engage in a "back door" workaround to avoid the consequences of a court

order.  Accordingly, the Court DENIES Defendants' request to dismiss this case as duplicative for improper claim-splitting.

### C.    Collateral Estoppel

In their next argument for dismissal, Defendants argue that Citcon should be collaterally estopped from relitigating the issue of joint and several liability.  MTD at 14.  Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.  *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012).  Only the most relevant factor, the full and fair opportunity to litigate, is the Court's focus here.

In *RiverPay*, Citcon raised the issue of joint and several liability for the first time in its post-verdict briefing.  *See RiverPay* Order on Post-Verdict Briefing at 13.  Although this Court denied Citcon's post-verdict request, it did so because the evidence presented at trial had never been under a theory of joint and several liability.  *See id.*  Thus, the defendants there — RiverPay, Hua, and Shi — did not actually litigate the issue of joint and several liability.

Here, Citcon seeks to litigate the issue of joint and several liability against all defendants.[3]  Dino Lab was not a defendant in the *RiverPay* case.  So, even if the issue at stake had actually been litigated in *RiverPay*, Dino Lab was not given a full and fair opportunity to litigate the joint and several liability issue.  For Miao, although he was a defendant in the prior action, Miao was dismissed from the case before trial.  Thus, Miao did not have an opportunity to litigate the joint and several liability issue in *RiverPay* either, or the facts as they pertain to him.  Accordingly, the Court finds that the issue of joint and several liability is not barred by the doctrine of collateral estoppel, and the Court

---

[3]  In lieu of the above analyses for personal jurisdiction and res judicata, the joint and several liability issue will focus only on the remaining defendants, Miao and Dino Lab, Inc.

United States District Court
Northern District of California

1    DENIES Defendants' request for dismissal on those grounds.

2    **D.    The Second Amended Complaint Fails to State a Claim for
          Misappropriation of Trade Secrets Under the DTSA and CUTSA**

3    **1.    Judicial Notice**

4

5        The Court first addresses Citcon's request for judicial notice.  Although a district

6    court generally may not consider any material beyond the pleadings in ruling on a 12(b)(6)

7    motion, the Court may take judicial notice of documents referenced in the complaint, as

8    well as matters in the public record, without converting a motion to dismiss into one for

9    summary judgment.  *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001)

10   *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–

11   26 (9th Cir. 2002).  Additionally, the Court may take judicial notice of matters that are

12   either "generally known within the trial court's territorial jurisdiction" or "can be

13   accurately and readily determined from sources whose accuracy cannot reasonably be

14   questioned."  Fed. R. Evid. 201(b).  Public records, including judgments and other court

15   documents, are proper subjects of judicial notice.  *See, United States v. Black*, 482 F.3d

16   1035, 1041 (9th Cir. 2007).

17       Here, Citcon requests judicial notice of the *RiverPay* Judgment.  *See* Opp'n at 23.

18   The Court entered judgment against RiverPay for trade secret misappropriation of source

19   code, but in favor of Hua and Shi.  *See RiverPay* Dkt. Judgment at 3.  The Court GRANTS

20   this request for judicial notice as to ECF No. 552, as this judgment is a public document

21   filed during federal court proceedings.  *See Black*, 482 F.3d at 1041.

22       **2.    Failure to State a Claim for Trade Secret Misappropriation**

23       The Court now addresses the sufficiency of Citcon's two claims against Miao and

24   Dino Lab, as the claims against these two defendants are not barred by res judicata.  Citcon

25   alleges that the defendants misappropriated its trade secrets under both 18 U.S.C. § 1836

26   (the Defend Trade Secrets Act, or DTSA) and California Civil Code § 3426.1 (the

27   California Uniform Trade Secrets Act, or CUTSA).  *See* SAC.  To plead trade secret

28   misappropriation under both the DTSA and the CUTSA, a plaintiff must plead (1) its

ownership of the trade secret, (2) that the defendant acquired it through improper means, and (3) that the defendants' actions damaged the plaintiff.  *See Rockwell Collins Inc. v. Wallace*, Case No. 17-cv-1369-AG, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017).

As a preliminary matter, Defendants move to dismiss Citcon's amended complaint on the grounds that it is "at least as deficient — if not more so — than its allegations against RiverPay that were dismissed in its second amended complaint in the RiverPay case."  MTD at 16.  Additionally, Defendants assert that the amended complaint is "filled with vague, conclusory allegations made on 'information and belief.'"  *Id.* at 17.  A plaintiff must plead a claim with "facial plausibility" that allow[s] the court to draw the reasonable inference that the *defendant is liable for the misconduct alleged*."  *Iqbal*, 556 U.S. at 663 (emphasis added).  Additionally, the Federal Rules of Civil Procedure require a pleading to give a defendant "fair notice" of the claim being asserted and the "grounds upon which it rests."  *Yamaguchi v. United States Dept. of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997); Fed. R. Civ. P. 8(a)(2) (requiring that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief.").  Furthermore, where "all defendants are lumped together in a single, broad allegation," without "any specificity [of] how each . . . defendant allegedly" committed illegal acts, the plaintiff's complaint fails to put defendants on notice of the claims asserted against them.  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

A trade secret misappropriation claim requires pleading that the defendants misappropriated the trade secrets; that is, acquired them through improper means. *See* 18 U.S.C. § 1839(3); see also Cal. Civ. Code § 3426.1(2); *see also Rockwell*, 2017 WL 5502775 at *2.  Here, the Court addresses the claims for both defendants because Citcon pleads the same facts for each of the remaining defendants regarding misappropriation.

Citcon pleads that "[o]n information and belief, Dino Lab and Miao, in conspiracy with the other Defendants, misappropriated Citcon's source code on which Dino Lab and Miao worked as Citcon's contractors."  SAC ¶ 47. This is a legal conclusion with no factual basis.  Citcon also alleges that "Hua, Miao, and Dino Lab created an incident to

give Miao an opportunity to leave Citcon without undue suspicion of Miao's true goal of leaving to work for Citcon's competitor, RiverPay." SAC ¶ 32.  But it is unclear what that "incident" entailed or what the defendants' roles were in creating it.  Similarly, Citcon alleges "Defendants acquired Citcon's trade secret information in the improper and unlawful manner as stated in the Chronology of Events. On information and belief, Miao and Citcon [sic] [4] wrongfully acquired the Source Code from Citcon and disclosed it to MaplePay, Zheng and Han."  SAC ¶ 56.  This too is a conclusory allegation that fails to provide notice to the defendants.

The only factual basis supporting these vague allegations is this Court's judgment in favor of Citcon in the *RiverPay* case.  Regardless of whether this Court takes judicial notice of the *RiverPay* Judgment, Citcon's complaint still needs to establish that the existing defendants in the instant case actually had something to do with RiverPay's wrongful acts.  Citcon's legal conclusions assume that RiverPay's liability in the prior case transfers liability to the other defendants here.  Like in *RiverPay*, Citcon alludes to a conspiracy theory for the trade secret claims.  *See* SAC ¶¶ 32, 47.  Here too, this attempt at a conspiracy theory fails because Citcon does not plead the necessary element of a conspiracy claim — that any agreement existed between Miao, Dino Lab, and the other defendants for trade secret misappropriation of the source code.  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994).  Further, it is unclear how Miao and Dino Lab have any connection to MaplePay.  That Miao was a contractor for RiverPay does not mean that he improperly acquired trade secrets, transmitted them to his employer (Dino Lab), or that they were transmitted to RiverPay's wholly owned subsidiary MaplePay.  Citcon must plead some facts to support actual misappropriation by Miao and Dino Lab, because the current allegations, as pled, are insufficient.

//

//

---

[4]  This appears to be a typographical error, and the Court assumes Citcon meant to say "Dino Lab" as it did in paragraph 47 of the second amended complaint.

### 3.   Leave to Amend

Generally, a Court must grant leave to amend freely.  Fed. R. Civ. P. 15(a). However, in granting leave to amend, the Court considers: (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and/or (4) futility of the proposed amendment.  *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1319 (9th Cir. 1984) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).  Here, amendment of the claims against Miao and Dino Lab is appropriate.  Thus, the Court GRANTS the defendants' motion to dismiss under 12(b)(6) with LEAVE TO AMEND.

## IV.   CONCLUSION

For the reasons stated above, the motion to dismiss the Second Amended Complaint is GRANTED without leave to amend for lack of personal jurisdiction over MaplePay, Zheng, Han, and Wang.  No claims remain against MaplePay, Zheng, Han, and Wang.

The motion to dismiss the Second Amended Complaint for res judicata and claim-splitting is DENIED as to all claims against defendants Miao and Dino Lab, Inc.  Citcon's DTSA and CUTSA claims against Miao and Dino Lab, Inc. are not barred by the res judicata or claim-splitting doctrines.

The motion to dismiss the Second Amended Complaint for collateral estoppel is DENIED as to all claims made under joint and several liability theories against Miao and Dino Lab, Inc.

The motion to dismiss the Second Amended Complaint is GRANTED WITH LEAVE TO AMEND as to all claims against Miao and Dino Lab, Inc., for failure to state a claim upon which relief can be granted.

All claims against MaplePay, Zheng, Wang, and Han have been dismissed.  The Clerk of Court is asked to terminate them as defendants.  Citcon may file its Third Amended Complaint by **April 16, 2021**, but may not add additional defendants or claims to that complaint without advance leave of Court.  Defendants Miao and Dino Lab, Inc. may wait to file their Answer or Motion to Dismiss until 14 days after the Third Amended Complaint has been filed.

United States District Court
Northern District of California

1

2       **IT IS SO ORDERED.**

3

4    Dated:  April 2, 2021                    _____

5                                             NATHANAEL M. COUSINS
                                              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28