UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITCON USA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HANG MIAO, et al.,<br><br>    Defendants. | Case No. 19-cv-02112-NC<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 78 |

Defendants Hang "Hank" Miao and Dino Lab, Inc. move to dismiss plaintiff Citcon USA, LLC's third amended complaint. Dkt. No. 78 ("MTD"). As before, Citcon alleges that Defendants engaged in trade secret misappropriation of Citcon's source code. *See* Dkt. No. 74, Third Amended Complaint ("TAC"). Again, however, Citcon fails to allege sufficient facts to support its claims against Miao and Dino Lab. The Court finds that Citcon's third amended complaint continues to allege vague and conclusory claims that are implausible. Accordingly, the Court GRANTS the motion to dismiss with LEAVE TO AMEND.

I.  **BACKGROUND**

The Court previously discussed the formation of MaplePay and RiverPay, and summarized the history of the prior lawsuit in its April 2, 2021, order. *See* Dkt. No. 60.

Although a district court generally may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion, the Court may take judicial notice of documents

referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Additionally, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

The Court previously granted judicial notice of the Judgment in the prior case, *Citcon USA, LLC v. RiverPay Inc. et al.*, No. 5:18-cv-02585-NC (N.D. Cal.) ("*RiverPay*"). *See* Dkt. No. 60; *see also RiverPay* Dkt. No. 552 ("Judgment"). Here, both parties ask the Court to acknowledge general disputes in the RiverPay case. *See* MTD at 6 ("The Court may take judicial notice that the parties generally disputed in the *RiverPay* case whether Citcon or Dino Lab was the rightful owner of the intellectual property for the allegedly misappropriated code."); *see also* Dkt. No. 81 ("Opp'n") at 6 ("this Court's prior experience with the Source Code in the Previous Case should be taken into account in assessing the plausibility question regarding the particularity of the trade secret allegations.").

The Court can take judicial notice of the parties' briefs and court opinions from prior litigation without converting defendants' 12(b)(6) motion into a Rule 56 motion. *McMahon v. Best*, No. 00-cv-00616-CRB, 2000 WL 1071828, at *3 (N.D. Cal. July 21, 2000). Thus, the Court will take judicial notice of facts in the *RiverPay* Judgment, Verdict, and prior court opinions and briefs regarding York Hua's departure from Citcon and acquisition of Citcon's source code in June 2017 prior to joining RiverPay.

### A. Procedural History

On April 18, 2019, Citcon filed the instant case against MaplePay and Miao for misappropriation of trade secrets under federal and state law. *See* Dkt. No. 1. Citcon later

1    amended its complaint on two different occasions to add Zheng, Han, Wang, and Dino
2    Lab, Inc. as defendants.  *See* Dkt. Nos. 12, 16.
3          Defendants MaplePay, Miao, Zheng, Han, Wang, and Dino Lab, Inc. filed a motion
4    to dismiss, arguing (1) that this Court lacked personal jurisdiction over MaplePay, Zheng,
5    Han, and Wang, (2) that res judicata bars the complaint, and (3) that Citcon's complaint
6    fails to state a claim.  Dkt. No. 44.  This Court granted the motion in part and dismissed
7    MaplePay, Zheng, Han, and Wang for lack of personal jurisdiction.  Dkt. No. 60.  The
8    Court denied the motion in part, as to defendants Miao and Dino Lab, for res judicata,
9    claim-splitting, and collateral estoppel.  *Id.*  The Court granted the motion with leave to
10   amend, as to Maio and Dino Lab, for failure to state a claim.  *Id.*  On June 7, 2021, Citcon
11   amended the complaint for the third time, alleging misappropriation of trade secrets under
12   the Defend Trade Secrets Act, 18 U.S.C. § 1836, and under the California Uniform Trade
13   Secrets Act, Cal. Civ. Code § 3426.3 *et seq*.  *See* TAC.  Defendants again move to dismiss
14   under Rule 12(b)(6) for failure to state a claim.  The motion is fully briefed, and the Court
15   vacated the hearing set for July 28, 2021.  *See* Dkt. Nos. 78, 81, 83, 84.  All parties have
16   consented to the jurisdiction of a magistrate judge.  Dkt. Nos. 6, 43.

17   **B.   Allegations in Third Amended Complaint**
18         Citcon alleges that "[t]his case is related to *Citcon USA LLC v. RiverPay Inc. et al.*,
19   Case No. 5:18-cv-02585-NC [(N.D. Cal.)] (the 'RiverPay Case'). Judgement has been
20   entered in the RiverPay Case that RiverPay Inc. ('RiverPay') and its co-founder York Hua
21   ('Hua')[1] misappropriated Citcon's source code with malice, oppression, or fraud. The
22   same source code misappropriated in the RiverPay Case is also at issue in this case and is
23   referred to hereinafter as the 'Source Code.'" TAC ¶ 10.  "RiverPay and Hua's

---

[1] In the prior lawsuit, the *RiverPay* case went to trial where a jury awarded Citcon $1.5 million based on RiverPay's unjust enrichment from misappropriation of Citcon's Source Code. *RiverPay* Dkt. No. 487 ("Verdict") at 4.  Although the jury found that defendants RiverPay and Hua acquired or used Citcon's source code by improper means, the jury did not find any liability against York Hua or Kenny Shi.  *Id.*  The jury only found that RiverPay acted with malice, oppression, or fraud but expressly declined to find that defendants Hua and Shi did so.  *RiverPay* Dkt. No. 550 ("Findings of Fact") at 10.

misappropriation of the Source Code was accomplished through Dino Lab." TAC ¶ 11. York Hua "cofounded Dino Lab in 2015 . . . as a car wash company," and later "converted Dino Lab to a contract coding company." *Id.* Dino Lab "approached Citcon in early 2016" to provide contract coding services for Citcon. *Id.* "A nondisclosure agreement (the 'NDA') was signed between Citcon and Dino Lab of which Hua signed on behalf." *Id.* Dino Lab also drafted an independent contractor agreement (the "Dino Lab Contract") which Dino Lab and Citcon signed in 2016 but was later terminated in late 2017. *Id.* "Under the contract, Dino Lab's employees worked on various coding projects for the Source Code and had ready access to the Source Code who worked on Citcon's projects were allowed direct access to the Source Code, subject to their confidentiality obligations under both the NDA and the Dino Lab Contract." *Id.* ¶ 12. "Dino Lab's co-owners Simon Han and Ryan Zheng" registered RiverPay and its subsidiary MaplePay, Inc. "with the specific purpose of competing with Citcon." *Id.* ¶ 13. "The Source Code was then taken through Dino Lab to RiverPay," a competitor company. *Id.*

"Miao started to work for Dino Lab in 2015 and started to work for Citcon under the Dino Lab Contract in 2016. Miao worked extensively on many parts of the Source Code and had direct access to the Source Code until October 2017 when Miao quit Citcon and joined RiverPay." *Id.* ¶ 15. "Dino Lab created an incident to give Miao an opportunity to leave Citcon without undue suspicion of Miao's true goal of joining RiverPay to avoid arousing suspicion of Citcon." *Id.* ¶ 16. Citcon alleges facts detailing the incident that eventually led to Miao acquiring a full-time employment offer from Citcon in October 2017. *Id.* ¶ 17. Sometime after the "incident," "Miao quickly joined RiverPay" and soon after published "a defaming piece on the Internet against Citcon." *Id.* ¶ 23. "At some point during Miao's contract period with Citcon, Miao and Hua made copies of Citcon's trade secret source code and took them from Citcon's facilities and servers." *Id.* ¶ 24. After he stated [sic] working for RiverPay, Miao used the Source Code in his possession to continue improving RiverPay's source code." *Id.* ¶ 25.

4

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

Defendants Miao and Dino Lab move to dismiss Citcon's complaint on the grounds that Citcon fails to state a claim under Rule 12(b)(6). *See* MTD. Citcon alleges that the defendants misappropriated trade secrets under both 18 U.S.C. § 1836 (the Defend Trade Secrets Act, or DTSA) and California Civil Code § 3426 *et seq* (the California Uniform Trade Secrets Act, or CUTSA). *See* TAC. The Court finds that Citcon does not sufficiently allege its claims for misappropriation of trade secrets under the DTSA and CUTSA.

A plaintiff must plead a claim with "facial plausibility" that allow[s] the court to draw the reasonable inference that the *defendant is liable for the misconduct alleged*." *Iqbal*, 556 U.S. at 663 (emphasis added). Additionally, the Federal Rules of Civil Procedure require a pleading to give a defendant "fair notice" of the claim being asserted

5

and the "grounds upon which it rests." *Twombly,* 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2) (requiring that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief."). "Furthermore, where 'all defendants are lumped together in a single, broad allegation,' without 'any specificity [of] how each . . . defendant allegedly' committed illegal acts, the plaintiff's complaint fails to put defendants on notice of the claims asserted against them." *Sepehry-Fard v. Nationstar Mortgage LLC*, No. 14-cv-03218-LHK, 2015 WL 332202, at *15 (N.D. Cal. Jan. 26, 2015) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

"Disclosure or use of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that his or her knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" constitutes trade secret misappropriation. Cal. Civ. Code § 3426.1(b)(2)(B)(ii). To plead trade secret misappropriation under both the DTSA and the CUTSA, a plaintiff must plead (1) its ownership of the trade secret, (2) that the defendant acquired it through improper means, and (3) that the defendants' actions damaged the plaintiff. *See Rockwell Collins Inc. v. Wallace*, No. 17-cv-1369-AG, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017).

**A.   Claims Against Dino Lab, Inc.**

The Court finds that Citcon's allegations against Dino Lab remain vague and conclusory and fail to state a plausible claim for relief. First, Citcon argues that Hua was the "proven thief of the Source Code in the Previous Case." Opp'n at 3. In the *RiverPay* case, although the jury found that defendants RiverPay and Hua acquired or used Citcon's source code by improper means, the jury did not find any individual liability against Hua. *See* Dkt. No. 60 at 4; *RiverPay* Dkt. No. 487 "Verdict" at 4. With this in mind, Citcon fails to adequately allege facts about *who* misappropriated the source code at Dino Lab (e.g., Hua, Miao, or both), *how* those actors participated in the misappropriation, and *where* and *when* such misappropriation occurred.

In addition to the lacking factual basis, Citcon also fails to plead any elements of

6

1   vicarious liability.  *See Jones v. Royal Admin Servs., Inc.*, 887 F.3d 443, 450 (9th Cir.
2   2018) ("[a]n employer is subject to vicarious liability for a tort committed by its employee
3   for acting within the scope of employment").  Though not required, Citcon's allegations
4   seem to rely on some type of vicarious tort liability by stating that the misappropriation
5   "was accomplished *through* Dino Lab." *See* TAC ¶ 11.  Citcon does not allege that Dino
6   Lab itself actually took and utilized the trade secrets.  Without pleading the elements of a
7   vicarious liability claim, or pleading the facts necessary to support it, the Court cannot
8   draw the inferences Citcon pursues.

9   Finally, the third amended complaint contains a timing discrepancy that precludes
10  plausibility.   Hua was employed by Citcon, not Dino Lab, prior to joining RiverPay in
11  June 2017.  *See Citcon USA, LLC v. RiverPay Inc.*, No. 18-cv-002585-NC, 2019 WL
12  2327885, at *2 (N.D. Cal. May 31, 2019) (in denying partial summary judgment, this
13  Court found that Hua "worked for Citcon through June 2017" prior to joining RiverPay).
14  And although Citcon alleges that Hua created Dino Lab in 2015 and later converted it into
15  a contract coding company, TAC ¶ 11, Citcon does not allege that Hua was actually
16  employed or affiliated with Dino Lab during the alleged misappropriation nor had any
17  influence over the actors at Dino Lab who engaged in the misappropriation.  If Citcon's
18  allegations against Dino Lab hinge entirely on Hua's actions, then the Court cannot draw a
19  reasonable inference that Dino Lab is liable for the misconduct alleged.

20  Furthermore, and as discussed below, if Citcon's allegations against Dino Lab hinge
21  instead on Miao's actions then there are similar issues.  Citcon fails to allege the timing of
22  when Miao would have taken Citcon's source code to RiverPay, and Citcon also fails to
23  clarify the inconsistency between the *RiverPay* case (where a jury found that Hua
24  improperly acquired the source code), and the instant case (that Miao is the individual who
25  misappropriated the source code).  Thus, these vague and inconsistent allegations about
26  Hua and Miao preclude a plausible claim for relief against Dino Lab.  Accordingly, the
27  Court finds that Citcon failed to state a claim against Dino Lab for trade secret
28  misappropriation under the DTSA and CUTSA.

7

### B. Claims Against Hank Miao

Citcon alleges that Miao acquired and made copies of Citcon's source code during his contract period with Citcon and took the copies to continue improving RiverPay's source code. TAC ¶ 24–25. First, the Court will not address the arguments on indirect misappropriation because Citcon alleges that Miao obtained the trade secrets directly from the plaintiff.

Second, Citcon alleges that "Dino Lab created an incident to give Miao an opportunity to leave Citcon without undue suspicion of Miao's true goal of joining RiverPay to avoid arousing suspicion of Citcon." *Id.* ¶ 16. But the allegations that follow only describe the events involving Miao's change from his role as a contractor to his role as a full-time employee for Citcon; the allegations do not describe the events that involve leaving Citcon for RiverPay. *See* TAC ¶¶ 16–23. It is still unclear what the relevance is of this incident, especially because Citcon concludes its allegations by saying that Miao made copies of the source code "[a]t some point during Miao's *contract period* with Citcon," rather than during the full-time employment he obtained as a result of the "incident." *See* TAC ¶ 24 (emphasis added). These vague allegations about a conspired incident do not create a plausible inference that Miao improperly obtained Citcon's source code to take over to RiverPay.

Third, Citcon's allegations about Miao's improper means fail to establish plausible entitlement to relief. Citcon's basis for alleging that Miao used improper means is the "breach or inducement of a breach of a duty to maintain secrecy," and that he knew his "knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Opp'n at 5 (citing Cal. Civ. Code § 3426.1(a), (b)(2)(B)(ii)). Citcon argues that this is supported by allegations regarding the Dino Lab Contract and the NDA. Opp'n at 5. But Citcon's allegations assume that the NDA and Dino Lab Contract prohibited making copies of the source code, yet there is no indication that doing so was also prohibited for use in the course of Miao's work.

Citcon must plead facts showing that Miao had a duty not to use the information in

8

the way alleged. *See Space Data Corporation v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017); *Farhang v. Indian Inst. Of Tech., Kharagpur*, No. 08-2658, 2010 WL 2228936, at *15 (N.D. Cal. June 1, 2010) (regarding insufficiency of allegations for improper use regarding NDA); *see also S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. 10-8026, 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011) (finding that the complaint alleged no facts to suggest that defendants engaged in anything other than approved uses under the NDA). Citcon did not plead that it had a policy or rule against programmers downloading or making copies of the code, nor that Citcon disapproved of Miao making copies of the source code through the course of his work. *See Rockwell*, WL 5502775 at *3 (denying dismissal because the plaintiff plead that defendant's "downloads were 'unauthorized' because of specific company policies and because the company never gave him permission to download the information."). Therefore, Citcon insufficiently pleads trade secret misappropriation against Miao because it fails to adequately allege improper means.

More importantly, Citcon's trade secret misappropriation claims do not appear to be correctly directed at Miao as an individual. Citcon argues that it is "highly likely" that Miao took Citcon's source code to RiverPay because he had access to the code while working under contract for Citcon and he later worked for RiverPay. Opp'n at 5. Not only is a "high likelihood" not the proper pleading standard, but Citcon fails to meet the proper implausibility standard here.

"If there are two alternative explanations . . . both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). *In re Century Aluminum Co. Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *Id.* (citing *Iqbal*, 556 U.S. at 678). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible

9

within the meaning of *Iqbal* and *Twombly*." *Id.* Here, accepting the allegations as true, Citcon's source code could have been misappropriated by Miao when he took it from Citcon's facilities and servers and made copies with Hua, *see* TAC ¶ 24, but the "obvious alternative explanation" is that the source code was instead misappropriated by Hua in June 2017 when he downloaded it from Citcon's computers, *see RiverPay*, WL 2327885 at *2; *see RiverPay* Verdict; *see also RiverPay* Dkt. No. 136 ¶ 59.

In *RiverPay,* and in Citcon's previous complaints in the instant case, Citcon acknowledges that Hua brought Citcon's source code to RiverPay and used it "as the foundation for RiverPay's products and services." *See* Dkt. No. 16 ("SAC") ¶ 31. Citcon also acknowledges that it was Hua who "acquired or used the [Source Code] by improper means" and incorporated them into RiverPay's competing products. *See* RiverPay Verdict at 4. Citcon alleges here that Miao left Citcon in October 2017 and then later joined RiverPay, at an unidentified time. *See* TAC ¶¶ 15, 23, 24. It is unclear how Citcon plans to assign liability to Miao for taking the source code from Citcon to RiverPay in October 2017 after litigating the entire *RiverPay* case on the premise that Hua was the actor who took that same source code to RiverPay in June 2017. Citcon fails to plead facts excluding the possibility that the alternative explanation is true or that both explanations somehow worked in tandem. Thus, Hua's actions in the *RiverPay* case present a plausible alternative explanation for the misappropriation of Citcon's source code. Accordingly, the Court finds that Citcon failed to state a claim against Miao for trade secret misappropriation under the DTSA and CUTSA.

**IV. CONCLUSION**

For the reasons stated above, the motion to dismiss the Third Amended Complaint is GRANTED with LEAVE TO AMEND for failure to state a claim upon which relief can be granted. The Court does not find that further opportunity to amend would be futile because the Court only granted Citcon leave to amend its complaint one time after Citcon amended on its own to add new parties. Citcon may file its Fourth Amended Complaint by **August 18, 2021**, but may not add additional defendants or claims to that complaint

without advanced leave of Court.  If no corrective complaint is timely filed, the Court will enter judgment for defendants.  Defendants Miao and Dino Lab, Inc. may wait to file their Answer or Motion to Dismiss until 14 days after the Fourth Amended Complaint has been filed.

**IT IS SO ORDERED.**

Dated:  August 4, 2021                                    _____
                                                    NATHANAEL M. COUSINS
                                                    United States Magistrate Judge