UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITCON USA, LLC,

          Plaintiff,

     v.

HANG "HANK" MIAO, and others,

          Defendants.

Case No.19-cv-02112-NC

**ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

Re: ECF 90

Defendants Hang "Hank" Miao and Dino Lab, Inc. move to dismiss Plaintiff Citcon USA, LLC's Fourth Amended Complaint, ECF 90 ("MTD"). As before, Citcon alleges that Defendants engaged in trade secret misappropriation of Citcon's Source Code. *See* ECF 89, Fourth Amended Complaint ("FAC"). Again, however, Citcon fails to allege sufficient facts to support its claims against Miao and Dino Lab. The Court finds that Citcon's FAC continues to allege vague and conclusory claims that are implausible. Accordingly, the Court GRANTS the motion to dismiss. Because the Court finds that further amendment would be futile, leave to amend the complaint is DENIED.

I.    **BACKGROUND**

The Court previously discussed the formation of MaplePay and RiverPay and summarized the history of the prior lawsuit in its April 2, 2021, order. *See* ECF 60.

Additionally, the Court previously granted judicial notice of the Judgment in the

United States District Court
Northern District of California

1    prior case, *Citcon USA, LLC v. RiverPay Inc. et al.*, No. 5:18-cv-02585-NC (N.D. Cal.)

2    ("*RiverPay*").  *See* ECF 60; *see also RiverPay* ECF 552 ("Judgment").  Here, both parties

3    acknowledge that the general disputes in the *RiverPay* case are the proper subject of

4    judicial notice.  *See* MTD at 1 (noting that the Court has previously taken judicial notice of

5    Citcon's prior allegations of misappropriation); *see also* ECF 91 ("Opp'n") at 7 n.1

6    (acknowledging the relevancy of the *RiverPay* judgment to the Court's analysis as well as

7    the fact that it was attached as an exhibit to the FAC).  Thus, the Court will take judicial

8    notice of facts in the *RiverPay* Judgment, Verdict, and prior court opinions and briefs

9    regarding York Hua's departure from Citcon and acquisition of Citcon's Source Code in

10   June 2017 prior to joining RiverPay.

11         **A.  Procedural History**

12         On April 18, 2019, Citcon filed the instant case against MaplePay and Miao for

13   misappropriation of trade secrets under federal and state law.  *See* ECF 1.

14         Citcon later amended its complaint twice to add Zheng, Han, Wang, and Dino Lab,

15   Inc. as defendants. See ECF Nos. 12, 16.  Defendants MaplePay, Miao, Zheng, Han,

16   Wang, and Dino Lab, Inc. filed a motion to dismiss arguing: (1) that this Court lacks

17   personal jurisdiction over MaplePay, Zheng, Han, and Wang, (2) that res judicata bars the

18   complaint, and (3) that Citcon's complaint fails to state a claim.  ECF 44.  This Court

19   granted the motion in part and dismissed MaplePay, Zheng, Han, and Wang for lack of

20   personal jurisdiction.  ECF 60.  The Court denied the motion in part declining to dismiss

21   the claims against Defendants Miao and Dino Lab for res judicata, claim-splitting, and

22   collateral estoppel.  *Id.*  The Court granted the motion with leave to amend, as to Miao and

23   Dino Lab, for failure to state a claim under FRCP 12(b)(6).  *Id.*

24         On June 7, 2021, Citcon amended the complaint for the third time.  Defendants

25   Miao and Dino Lab again moved to dismiss arguing that the Third Amended Complaint

26   failed to state a claim under 12(b)(6).  ECF 78.  The Court granted the motion with leave to

27   amend, for failure to state a claim.  ECF 85.

28         On August 18, 2021, Citcon amended the complaint for the fourth time, alleging

United States District Court
Northern District of California

1    misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836,

2    and under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.3 against Miao

3    and Dino Lab.  *See* FAC.  Defendants again move to dismiss under Rule 12(b)(6) for

4    failure to state a claim.  The motion is fully briefed, and the Court vacated the hearing set

5    for October 6, 2021.  *See* ECF 90, 91, 92, 94.  All parties have consented to the jurisdiction

6    of a magistrate judge under 28 U.S.C. § 636(c).  ECF 6, 43.

7            **B.  Allegations in the Fourth Amended Complaint**

8            As before, Citcon alleges that Dino Lab "approached Citcon in early 2016" to

9    provide contract coding services for Citcon.  *Id.*  "A nondisclosure agreement (the 'NDA')

10   was signed between Citcon and Dino Lab of which Hua signed on Dino Lab's behalf."  *Id.*

11   Dino Lab also drafted an independent contractor agreement (the "Dino Lab Contract")

12   which Dino Lab and Citcon signed in 2016 but was later terminated in late 2017.  *Id.*  "The

13   Dino Lab contract contains the standard confidentiality and intellectual property ("IP")

14   assignment provisions in independent contract agreements."  Under the Dino Lab contract,

15   Dino Lab's employees worked on various coding projects for the Source Code and had

16   access to the Source Code.  *Id.* ¶ 12.  Dino Lab employees who worked on Citcon's

17   projects were allowed direct access to the Source Code, subject to their confidentiality

18   obligations." *Id.*  "The Source Code, which is substantially similar to Citcon's, was then

19   taken through Dino Lab to RiverPay," a competitor company.  *Id.* ¶ 13

20           "Miao started to work for Dino Lab in 2015 and started to work for Citcon under

21   the Dino Lab Contract in 2016.  He "had direct access to the Source Code until October

22   2017 when Miao quit Citcon and joined RiverPay."  *Id.* ¶ 15.  "At some point during

23   Miao's contract period with Citcon, Miao and Hua made copies of Citcon's trade secret

24   source code and took them from Citcon's facilities and servers."  *Id.* ¶ 24.  After he started

25   working for RiverPay, Miao used the Source Code in his possession to continue improving

26   RiverPay's source code."  *Id.* ¶ 25.

27           With respect to its new allegations in the FAC, Citcon alleges that "[a]t all relevant

28   times, Hua was a co-owner of Dino Lab, together with Ryan Zheng and Simon Han. Hua

1    was also an employee or agent of Dino Lab at all relevant times." FAC ¶ 34. "From 2015

2    until at least until October 2017 if not later, Miao was an employee of Dino Lab. Miao

3    became a contractor coder for RiverPay in October 2017, either through Dino Lab or

4    under his own personal corporation." *Id.* ¶ 35. "Dino Lab was Citcon's coding contractor

5    from April 2016 to October 2017 under a duty of confidentiality pursuant to the NDA and

6    the Dino Lab Contract." *Id.* ¶ 36. Dino Lab initially supplied two contract coders to

7    Citcon: Hua and Miao, both starting to code for Citcon under the Dino Lab Contract in

8    April 2016. Both Hua and Miao gained access to the Source Code under the NDA and the

9    Dino Lab Contract [,] and thus both were under duty of confidentiality to Citcon to not use

10   or disclose the Source Code, unless for Citcon's work as provided by the Dino Lab

11   Contract." *Id.* ¶ 37.

12        "Hua became an employee of Citcon in July 2017; however, Hua maintained a

13   hybrid position with Citcon by receiving a part of his compensation in the amount of

14   $5,000 per month from Citcon as Dino Lab's consulting fees." *Id.* ¶ 38. "These were paid

15   to him through Dino Lab, in addition to his monthly salary as a Citcon employee paid

16   directly to him through Citcon's payroll. This hybrid status of Hua was maintained until

17   he left Citcon in June 2017." *Id.*

18        Citcon also alleges that Hua "misappropriated the Source Code as an owner,

19   employee, and agent of Dino Lab for the benefit of Dino Lab. The three owners of Dino

20   Lab—Hua, Ryan Zheng, and Simon Han—intended that Dino Lab use its access to the

21   Source Code to misappropriate the code for the benefit of their other enterprise—

22   RiverPay. Dino Lab accomplished such misappropriation partly through Hua as an owner,

23   employee and agent of Dino Lab who acted within the scope of his employment or

24   agency." *Id.* ¶ 40. "While Hua also acted on behalf of RiverPay and for the benefit of

25   RiverPay in misappropriating the Source Code, the goals of RiverPay and Dino Lab were

26   coterminous in misappropriating the Source Code, both for the purpose of allowing

27   RiverPay to use the code as a head start to compete with Citcon." *Id.* ¶ 41. Citcon alleges

28   that "Dino Lab is thus vicariously liable for Hua's misappropriation." *Id.*

United States District Court
Northern District of California

4

1      Furthermore, Citcon alleges that "Miao also misappropriated the Source Code as

2      employee and agent of Dino Lab and acted within the scope of his employment or agency.

3      Miao was an employee of Dino Lab and was under the direction and management of Hua."

4      *Id.* ¶ 42.  Through the hiring of Tony Zhang, Citcon alleges, the three owners were able "to

5      put up a façade separating Hua from Dino Lab's daily work. . ." *Id.*  In fact, Hua controlled

6      Dino Lab's coding, including Miao's work for Citcon. *Id.*  The result was that "Miao

7      copied the Source Code and disclosed the code to RiverPay.  Hua directed Miao to acquire

8      the earlier version of the Source Code in September 2016 and a later version in February

9      2017.  Hua further directed Miao to transfer the stolen versions of the Source Code to

10      RiverPay in or about February 2017. . ." *Id.* ¶ 43.  This continued after Hua resigned from

11      Citcon in May 2017. *Id.* ¶ 44.  Finally, Citcon alleges that Miao acquired and disclosed the

12      Source Code through improper means.  *Id.* ¶ 45-46, and that he did so in the scope of his

13      employment, rendering Dino Lab vicariously liable for the misappropriation.  *Id.* ¶ 47.  As

14      a result of this misappropriation, Citcon alleges damages in an amount to be determined at

15      trial.  *Id.* ¶ 48.

16      **II.      LEGAL STANDARD**

17      A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the legal

18      sufficiency of a complaint." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To

19      survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

20      true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

21      662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

22      reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the

23      complaint and draw all reasonable inferences in favor of the non-moving party." *Retail*

24      *Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*,  768 F.3d 938, 945 (9th Cir.

25      2014).  A court, however, need not accept as true "allegations that are merely conclusory,

26      unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs.*

27      *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations omitted).  A claim is facially

28      plausible when it "allows the court to draw the reasonable inference that the defendant is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    liable for the misconduct alleged." *Id.*

2        If a court grants a motion to dismiss, leave to amend should be granted unless the

3    pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203

4    F.3d 1122, 1127 (9th Cir. 2000).

5    **III.    DISCUSSION**

6        Citcon alleges that Defendants misappropriated trade secrets under both 18 U.S.C. §

7    1836 (the Defend Trade Secrets Act, or DTSA)  and California Civil Code § 3426 (the

8    California Uniform Trade Secrets Act, or CUTSA).

9        Defendants move to dismiss the misappropriation claims against Miao on the

10    grounds that they are too vague and conclusory to state a plausible claim under Federal

11    Rule of Civil Procedure 12(b)(c) and that they contradict Citcon's prior misappropriation

12    allegations both in the *RiverPay* case and in earlier amended complaints in the instant case.

13    Defendants move to dismiss the misappropriation claims against Dino Lab on the grounds

14    that they fail to state a claim under FRCP 12(b)(6), or in the alternative, are barred by res

15    judicata.  What's more, Defendants argue that a vicarious liability claim against Dino Lab

16    based on either Miao's or Hua's conduct fails because Citcon has not stated a plausible

17    claim against for any tort which could give rise to vicarious liability for Dino Lab through

18    either Miao or Hua. *See* MTD at 9-10.

19        "Disclosure or use of a trade secret of another without express or implied consent

20    by a person who . . . knew or had reason to know that his or her knowledge of the trade

21    secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or

22    limit its use" constitutes trade secret misappropriation.  Cal. Civ. Code

23    § 3426.1(b)(2)(B)(ii).  To plead trade secret misappropriation under both the DTSA and

24    the CUTSA,  a plaintiff must plead (1) its ownership of the trade secret, (2) that the

25    defendant acquired it through improper means, and (3) that the defendants' actions

26    damaged the plaintiff. *See Rockwell Collins Inc. v. Wallace*, 17-cv-1369-AG, 2017 WL

27    5502775, at *2 (C.D. Cal. Nov. 10, 2017) (internal citations omitted).

28    **A. Claims Against Hang "Hank" Miao**

6

United States District Court
Northern District of California

1        The Court concludes that the claims against Hank Miao remain too vague and

2   conclusory to state a claim.  Additionally, the Court agrees with Defendants that Citcon

3   has failed to adequately identify which version of Source Code Miao allegedly

4   misappropriated.

5        Citcon alleges that Miao misappropriated the code "via Hua."  FAC ¶ 44.

6   Defendants urge that the allegation is vague as to the exact meaning of "via Hua."  Even

7   taking the phrase to mean that Hua directed Miao to misappropriate the code, Defendants

8   argue that it is still not clear when, where or how this happened.  Defendants urge that it is

9   further not clear from Citcon's new allegations whether Miao followed those instructions.

10  MTD at 4.

11       Similarly ambiguous, Defendants argue, is the meaning of "taken through Dino Lab

12  to RiverPay."  FAC ¶ 13.  Citcon's allegation is still vague about who provided what to

13  whom, as well as how it was provided.  *See* ECF 81 at 6 (noting that "Citcon fails to

14  adequately allege facts about *who* misappropriated the source code at Dino Lab (e.g., Hua,

15  Miao, or both), *how* those actors participated in the misappropriation, and *where* and *when*

16  such misappropriation occurred.").  The Court agrees that the allegations about Miao's

17  involvement in the misappropriation remain vague and conclusory.

18       Additionally, as was the case in previous complaints, it remains difficult to

19  reconcile allegations of Miao's involvement contained therein with the premise on which

20  Citcon litigated the *RiverPay* case—that Hua was the one to deliver the same Source Code

21  to RiverPay.  ECF 81 at 10 ("It is unclear how Citcon plans to assign liability to Miao for

22  taking the source code from Citcon to RiverPay in October 2017 after litigating the entire

23  *RiverPay* case on the premise that Hua was the actor who took that same source code to

24  RiverPay in June 2017.").  While the FAC provides more details about Miao's alleged

25  involvement than the Third Amended Complaint, it remains impossible to exclude the

26  alternative explanation that Hua was the one to take the code from Citcon, as the jury in

27  the *RiverPay* case found.  *See RiverPay*, WL 2327885 at *2; *see RiverPay* Verdict; *see*

28  *also RiverPay* ECF 136 ¶ 59.

1      "If there are two alternative explanations . . . both of which are plausible, plaintiff's

2   complaint survives a motion to dismiss under Rule 12(b)(6)." *In re Century Aluminum Co.*

3   *Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). But "[w]hen faced with two

4   possible explanations, only one of which can be true and only one of which results in

5   liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored

6   explanation but are also consistent with the alternative explanation." *Id.* (citing *Iqbal*, 556

7   U.S. at 678). "Something more is needed, such as facts tending to exclude the possibility

8   that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible

9   within the meaning of *Iqbal* and *Twombly*." *Id.* Here, accepting the allegations as true,

10  Citcon's Source Code could have been misappropriated by Miao when he took it from

11  Citcon's facilities and servers and made copies with Hua, *see* FAC ¶ 24, but the "obvious

12  alternative explanation" is that the Source Code was instead misappropriated by Hua in

13  June 2017 when he downloaded it from Citcon's computers. *See RiverPay*, WL 2327885

14  at \*2; *see RiverPay* Verdict; *see also RiverPay* ECF 136 ¶ 59. For those reasons, the

15  Court again concludes that Citcon has failed to state a plausible claim upon which relief

16  can be granted against Miao for trade secret misappropriation under DTSA and CUTSA.

17      A second problem with Citcon's claims against Miao is that the FAC fails to

18  identify the version of code which Miao allegedly misappropriated. Citcon alleges, in

19  relevant part, "Hua directed Miao to acquire the early version of the Source Code in

20  September 2016 and a later version in February, 2017. . . These two stolen versions

21  constituted the starting version of RiverPay." FAC ¶ 43. "After Hua resigned from Citcon

22  in May 2017, Miao continued to copy [sic] later versions of the source code under Hua's

23  instructions and provided the later version of the source code to river pay "via Hua." FAC

24  ¶ 44. It is difficult to tell whether the "later versions" is the same as the later version

25  produced in February 2017 or whether Citcon alleges for the first time Miao copied a

26  different "later version," or multiple "later versions" after Hua resigned from Citcon. The

27  Court has already found that the idea that Miao copied a later version is implausible. It

28  would also seem to contradict Citcon's own expert testimony in the *RiverPay* case.

United States District Court
Northern District of California

8

1    Accordingly, the Court concludes that Citcon has failed to state a claim with respect

2    to Miao.

3        **B.  Claims Against Dino Lab**

4        Citcon argues that Dino Lab is vicariously liable for misappropriation which Hua

5    and Miao, under the direction of Hua, performed in the scope of their respective

6    employments with Dino Lab.  "At all relevant times, Hua was a co-owner of Dino Lab,

7    together with Ryan Zheng and Simon Han.  Hua was also an employee or agent of Dino

8    Lab at all relevant times." FAC ¶ 34.  "From 2015 until at least until October 2017 if not

9    later, Miao was an employee of Dino Lab.  Miao became a contractor coder for RiverPay

10   in October 2017, either through Dino Lab or under his own personal corporation." *Id.* ¶ 35.

11   "Hua became an employee of Citcon in July 2017; however, Hua maintained a hybrid

12   position with Citcon by receiving a part of his compensation in the amount of $5,000 per

13   month from Citcon as Dino Lab's consulting fees which were paid to him through Dino

14   Lab, in addition to his monthly salary as a Citcon employee paid directly to him through

15   Citcon's payroll.  This hybrid status of Hua was maintained until he left Citcon in June

16   2017." *Id.* ¶ 38.

17       Citcon also alleges that Hua "misappropriated the Source Code as an owner,

18   employee, and agent of Dino Lab for the benefit of Dino Lab.  The three owners of Dino

19   Lab—Hua, Ryan Zheng, and Simon Han—intended that Dino Lab use its access to the

20   Source Code to misappropriate the code for the benefit of their other enterprise—

21   RiverPay.  Dino Lab accomplished such misappropriation partly through Hua as an owner,

22   employee and agent of Dino Lab who acted within the scope of his employment or

23   agency." *Id.* ¶ 40.  Furthermore, "Miao also misappropriated the Source Code as employee

24   and agent of Dino Lab and acted within the scope of his employment or agency. Miao was

25   an employee of Dino Lab and was under the direction and management of Hua." *Id.* ¶ 42.

26       Citcon alleges that, through the hiring of Tony Zhang, the three owners were able to

27   put up a façade separating Hua from Dino Lab's daily work.  In fact, Hua controlled Dino

28   Lab's coding, including Miao's work for Citcon.  *Id.*  The result was that "Miao copied the

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   Source Code and disclosed the code to RiverPay.  Hua directed Miao to acquire the earlier

2   version of the Source Code in September 2016 and a later version in February, 2017.  Hua

3   further directed Miao to transfer the stolen versions of the Source Code to RiverPay in or

4   about February 2017.  *Id.* ¶ 43.  This continued after Hua resigned from Citcon in May

5   2017.  *Id.* ¶ 44.  Finally, Citcon alleges that Miao acquired and disclosed the Source Code

6   through improper means, *id.* ¶ 45-46, and that he did so in the scope of his employment,

7   rendering Dino Lab vicariously liable for the misappropriation.  *Id.* ¶ 47.

8   Preliminarily, because the Court has concluded that the FAC fails to state a claim

9   against Miao, Citcon's theory of vicarious liability against Dino Lab for Miao's actions

10   must fail as well.   All that remains is whether Citcon can state a claim against Dino Lab

11   based on Hua's actions in the scope of his employment there.  Defendants argue that that

12   Plaintiff either fails to state a claim, or if it does state a claim based on the notion that Hua

13   was acting on behalf of Dino Lab, that claim would be barred by res judicata.

14   The Court concludes that the claims against Dino Lab are not barred by res judicata

15   because there are insufficient facts to establish that Hua and Dino Lab were in privity at

16   the time of the alleged misappropriation.  Further, Citcon has failed to state a claim against

17   Dino Lab for trade secret appropriation because the allegation that Hua was an employee

18   of Dino Lab at the time of the alleged misappropriation is implausible and contradicted by

19   Citcon's own pleadings.  Further, even accepting that Hua was employed by Dino Lab,

20   there is insufficient evidence that Hua acted in the scope of his employment while

21   committing any tort for which Dino Lab could be vicariously liable.

22   **1.   Res Judicata**

23   Res judicata, also known as claim preclusion, bars litigation in a subsequent action

24   of any claims that were raised or could have been raised in the prior action.  *W. Radio*

25   *Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  "Res judicata prevents

26   litigation of all grounds for, or defenses to, recovery that were previously available to the

27   parties, regardless of whether they were asserted or determined in the prior proceeding."

28   *Brown v. Felsen*, 442 U.S. 127, 131 (1979).  Res judicata "has the dual purpose of

1    protecting litigants from the burden of relitigating an identical issue with the same party or

2    has privy and of promoting judicial economy by preventing needless litigation." *Parklane*

3    *Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

4          In order for res judicata to apply there must be: (1) an identity of claims, (2) a final

5    judgment on the merits, and (3) identity or privity between parties. *W. Radio Servs. Co.*,

6    123 F.3d at 1192. Here, the prior case resulted in a jury trial, and the Court entered final

7    judgment on Citcon's trade secret misappropriation claims (a) in favor of Citcon and

8    against RiverPay in the amount of $1.5 million, and (b) against Citcon and in favor of Hua

9    and Shi. MTD at 5; *see also* RiverPay ECF 552. Thus, the final judgment on the merits

10   element is satisfied so the Court's analysis focuses on the identity or privity between

11   parties.

12         In a January 2020 order, granting in part Defendants' Motion to Dismiss the Second

13   Amended Complaint, this Court previously held that, as they were pled in the Second

14   Amended Complaint, res judicata did not bar misappropriation claims against Miao and

15   Dino Lab. ECF 60 at 19. Specifically, with respect to Dino Lab, the Court held that there

16   was an identity an identity of claims in the *RiverPay* case and the instant case in that both

17   involved trade secret misappropriation. By contrast it held that the two cases did not

18   involve the same parties or their privies because Dino Lab was not in privity with the

19   *RiverPay* defendants under the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S.

20   880, 884 (2008). *Id.* at 20. This Court found that, as pled in the Second Amended

21   Complaint, there was no "substantive legal relationship" between Dino Lab and Miao or

22   Hua. *See Taylor*, 553 U.S. at 894 (explaining the substantive legal relationship exception

23   to claim preclusion). ECF 60 at 22. The Court concluded that, as pled in the Second

24   Amended Complaint "[t]he defendants' reliance on an employer-employee relationship is

25   unsupported and insufficient to establish the required privity. . ." *Id.* at 23. Additionally,

26   the court held that none of the remaining *Taylor* categories adequately established privity

27   there either. *Id.* at 23-24.

28         Defendants here acknowledge that conclusion but argue that the FAC is different

United States District Court
Northern District of California

11

1    than the Second Amended Complaint because "those claims were not premised on Hua

2    being an agent or employee of Hua being an agent or employee of Dino Lab. Citcon's

3    claims in its FAC, however, are barred by res judicata because they are explicitly premised

4    on Hua allegedly having a principle and agent relationship with Dino Lab." ECF 90 at 15,

5    n. 4. They note that the *Taylor* court acknowledged a principle-agent relationship as being

6    the type of substantive legal relationship that can give rise to privity.

7            The Court disagrees because Plaintiff has pled insufficient facts to show privity.

8    The allegation that Hua maintained a "hybrid status" working at Dino Lab but consulting

9    for Citcon is inadequate to show that he was an agent for Dino Lab, especially when, as

10   discussed, Plaintiff has previously alleged that Hua was a full-time Citcon employee.

11   Outside of the res judicata context, the Ninth Circuit has noted that mere allegations of

12   privity could not be dispositive in stating a claim, while those claims are not plausible

13   given the record. *Prometheus Development Co., Inc. v. Everest Properties*, 289 F. App'x

14   211, 213 (9th Cir. 2008) (noting that "Plaintiffs' bare allegation of privity in their

15   complaint is insufficient to state a claim: whether parties are in "privity" is a legal

16   conclusion and courts are not bound to accept as true a legal conclusion couched as a

17   factual allegation.") (internal citations and quotation marks omitted). For the same

18   reasons, the Court declines to hold that the unsupported possibility of privity between Hua

19   and Dino lab are adequate to bar the claim based on res judicata.

20          The analysis of the other res judicata factors is identical to the analysis in the

21   Court's order dismissing the Second Amended Complaint. ECF 60 at 22. Accordingly,

22   the claims are not barred by res judicata.

23                        **2.    Failure To State a Claim**

24          Defendants argue that Citcon's new allegation that Dino Lab is vicariously liable

25   for misappropriation based on Hua's actions should be rejected as implausible for two

26   reasons. First, Citcon has previously pled and argued that Hua was Citcon's Head of

27   Operations and Products and its full-time employee. *RiverPay*, ECF 136 ¶ 16; MTD at 5

28   n. 2 (Citcon's Second Amended Complaint alleging that Hua was a "[f]ormer Dino Lab.");

United States District Court
Northern District of California

1    *id.* ¶ 28 (alleging that Hua received full-time employment at Citcon, giving him access to

2    the Source Code and facilitating the misappropriation.)  Second, the jury in the *RiverPay*

3    case previously found that Hua was not liable for misappropriation.  Accordingly, there is

4    no tort for Dino Lab to be vicariously responsible for, even assuming that Hua was acting

5    on behalf of Dino Lab.  ECF 90 at 9; *Riverpay* ECF 136 ¶ 16.  *See, e.g.*, *Jones v. Royal*

6    *Admin Servs., Inc.*, 887 F.3d 443, 450 (9th Cir 2018) ("An employer is subject to vicarious

7    liability for a tort committed by its employee acting within the scope of his employment.").

8       *Citcon* responds that "Miao misappropriated the Source Code as a Dino Lab

9    employee and under the Dino Lab contract, but per Hua's instructions."  Opp'n at 6.

10   According to Citcon, "The [FAC] also makes it clear that the reason why Hua could

11   command Miao was because Hua was one of three owners of Dino Lab" and the

12   misappropriation was for the benefit of RiverPay.  *Id.* at 7.

13      The Court agrees with Defendants that Hua's alleged actions cannot give rise to a

14   plausible claim of vicarious liability against Dino Lab.  These claims directly contradict

15   previous allegations of the timing and substance of Hua's role at Dino Lab.  Citcon has

16   previously alleged both that he was a "full time employee of Citcon" and "Former Dino

17   Lab employee" at the time of the alleged misappropriation. ECF 16 ¶ 24 (Citcon's Second

18   Amended Complaint alleging that Hua was a "[f]ormer Dino Lab."); *id.* ¶ 28 (alleging that

19   Hua received full-time employment at Citcon, giving him access to the Source Code and

20   facilitating the misappropriation.)  Further, in dismissing the Third Amended Complaint,

21   this court observed that Hua was employed by Citcon, not Dino Lab prior to joining

22   RiverPay in June 2017.  ECF 85 at 7.  Therefore, the court concluded that "[i]f Citcon's

23   allegations against Dino Lab hinge entirely on Hua's actions, then the Court cannot draw a

24   reasonable inference that Dino Lab is liable for the misconduct alleged." *Id.*

25      Unlike the Third Amended Complaint, the FAC alleges that Hua maintained a

26   "hybrid position" in which Citcon paid Hua a $5,000 monthly consulting fee "through

27   Dino Lab" as part of his compensation.  FAC ¶ 38.  Citcon also alleges that "Dino Lab

28   accomplished such misappropriation partly through Hua as an owner, employer and agent

United States District Court
Northern District of California

13

1    of Dino Lab who acted within the scope of his employment or agency. *Id.* ¶ 40. The

2    Court finds these new allegations implausible for two reasons. First, Citcon has alleged in

3    both the *RiverPay* litigation and throughout the instant case that Hua was a full-time

4    Citcon employee, and a former Dino Lab employee, at the time of the alleged

5    misappropriation. *See, e.g.*, *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th

6    Cir. 2010) ("a court is not required to accept as true allegations that contradict . . . matters

7    properly subject to judicial notice or allegations that are merely conclusory, unwarranted

8    deductions of fact, or unreasonable inferences."). What's more, the FAC offers few details

9    about this alleged payment scheme in which Citcon paid Hua a consulting fee through

10   Dino Lab, making it difficult to know which entity Hua was an employee of at the time of

11   the misappropriation, or whether the misappropriation was, in fact, within the scope of his

12   employment at Dino Lab. Additionally, the complaint does not specify the exact

13   timeframe of the consulting agreement or what precisely he was paid to do.

14   Even assuming the Court accepts as plausible new allegations that Hua maintained a

15   "hybrid position," the vagueness of information about the consulting agreement makes it

16   impossible to evaluate whether Hua was an employee of Dino Lab and whether he was

17   acting in the scope of his employment when the alleged misappropriation occurred.

18   Without that determination, the court cannot conclude or infer that Dino Lab was

19   vicariously liable for trade secret misappropriation. In that way, this case is like *Varlitsky*

20   *v. City of Riverside*, No. EDCV192099GBSPX, 2020 WL 4187767, at *5 (C.D. Cal. June

21   11, 2020). There, plaintiff brought claims against his county related to destruction of

22   property and misrepresentation stemming from the execution of a search warrant on his

23   property. The court noted that the plaintiff alleged "insufficient detail of where, when and

24   how" a deputy made false statements to permit a determination of whether he was acting in

25   the scope of his employment. The same is true here.

26   Because Citcon failed to plead facts sufficient to show that Hua either committed a

27   tort or did so in the scope of his employment, Dino Lab is not vicariously liable for trade

28   secret misappropriation under DTSA or CUTSA.

United States District Court
Northern District of California

14

1    Accordingly, Defendants' motion to dismiss is GRANTED.

2        **3.    Leave to Amend**

3        If a court grants a motion to dismiss, leave to amend should be granted unless the

4    pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203

5    F.3d 1122, 1127 (9th Cir. 2000).  Dismissal without leave to amend is improper unless it is

6    clear, upon de novo review, that complaint could not be saved by any amendment.

7    *Mueller v. Auker*, 700 F.3d 1180, 1192 (9th Cir. 2012).  Here, the Court finds that further

8    amendment would be futile, particularly in light of the opportunities Citcon has had to

9    adequately plead its claim.  *See Ismail v. Cty. of Orange*, 917 F. Supp. 2d 1060, 1066 (C.D.

10   Cal. 2012) ("[A] district court's discretion over amendments is especially broad 'where the

11   court has already given a plaintiff one or more opportunities to amend his complaint.'")

12   (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987)).

**IV.    CONCLUSION**

14       Plaintiff Citcon's claims against Miao remain implausible and vague, in several

15   cases contradicting its own earlier pleadings and contentions at trial.  With respect to Dino

16   Lab, Plaintiff has not established a plausible claim of vicarious liability based on the

17   actions of either Hua or Miao.  Accordingly, Defendants' Motion to Dismiss is

18   GRANTED.   Because the Court finds that future amendment would be futile, leave to

19   amend is denied.

20       **IT IS SO ORDERED.**

21

22   Dated:  November 2, 2021          _____

23                                        NATHANAEL  M. COUSINS
                                          United States Magistrate Judge

24

25

26

27

28

15